63 So.2d 631 (1953)
LAMBERT
v.
HIGGINS.
Supreme Court of Florida, Division B.
February 27, 1953.
Rehearing Denied March 31, 1953.
Baxter & Baxter, Fort Lauderdale, and Samuel R. Dighton, Orlando, for appellant.
J.B. Patterson, Fort Lauderdale, for appellee.
DREW, Justice.
Auberta B. Higgins sued Dewey Lambert for injuries arising out of an automobile accident. She charged that she was his guest at the time of the accident and that his gross negligence or willful and wanton misconduct in the operation of the automobile was the proximate cause of her injuries. Section 320.59, F.S.A. The trial resulted in a verdict in favor of the plaintiff, a final judgment was entered pursuant to the verdict and this appeal was taken therefrom.
Appellant poses two questions for our consideration. The first question goes to the sufficiency of the evidence to show gross negligence or willful and wanton misconduct of the defendant. We find in the record substantial, competent evidence to support the verdict of the jury. Under such circumstances it is elemental that we have no right to interfere with it.
The second question raised here relates to questions propounded to prospective jurors by plaintiff's counsel relating to their possible connection with insurance companies and an episode that occurred *632 during the trial with reference to a statement signed by the plaintiff shortly after the accident. We shall briefly discuss these two points.
The record shows that during the examination of the prospective jurors, the following took place on the examination by plaintiff's counsel of prospective juror Fellows:
"Q. What is your business? A. Real estate broker.
"Q. Prior to going into the real estate business, what was your business? A. Construction business.
"Q. Where did you follow that business? A. New York City.
"Q. Do you own any stock in any corporation? A. Yes, sir.
"Q. What type of corporation? A. Real estate corporation.
"Q. Is that the only corporation that you own any stock in? A. Construction corporation.
"Q. Mr. Fellows, you said you were interested in or had been interested in a real estate corporation and a construction company corporation. Any others that you have been interested in either as an employee or otherwise? A. I have been in the construction business, insurance company, machine shop.
"Q. Your connection with being in the insurance business, were you an agent, or employee, of an insurance company? A. Agent.
"Q. Is it the American Fire & Casualty Company? A. I believe it was the Hartford and I can't remember, it was fifteen years ago."
On the examination of other prospective jurors, at some point in the examination, plaintiff's counsel asked the question: "Did you ever do any adjusting work?"
Defendant's counsel very strenuously argues that such conduct was clearly erroneous, injurious to his client's cause and constituted reversible error. We have most carefully reviewed the proceedings of this trial and we conclude that no reversible error has been made to appear in this connection. This situation arose in the examination of the jury on the voir dire. There is a very delicate balance to be maintained in cases of this kind to protect both the interest of the plaintiff and defendant. Ordinarily, the trial Judge is in the best position to do this and, unless there is a clear abuse of his authority shown, we are not inclined to interfere with the result of the trial on this ground. We approve the following language taken from the annotation in 4 A.L.R.2d, pages 765-766:
"The situation is quite different when it comes to examining jurors on the voir dire. Here the courts must balance off the conflicting rights of the opposing parties. Both parties are entitled to an impartial jury. The plaintiff, on the one hand, is entitled to have eliminated from the jury all those who have a financial interest in the result of the trial by reason of an interest in defendant's insurance company, The defendant, on the other hand, is entitled to a jury whose verdict will not reflect the fact that it had in mind that an insurance company, and not the defendant, would be required to pay the judgment. Unfortunately, under the present system of selecting jurors, plaintiff's counsel in weeding out those jurors whose presence on the jury will, he believes, be prejudicial to the plaintiff, must, of necessity, inform the jurors generally, or at least suggest the fact to them, that the defendant is insured. Thus, it seems that the rights of either the plaintiff or the defendant must be violated.
"The tendency of the courts has been not to deny the right to inquire into the insurance connections of the jurors but to so restrict the inquiry that as little harm will be done to the defendant as possible. The examination by plaintiff's counsel must be conducted in good faith * * *."
Finally, we hold that the examination of the jury did not go beyond the limits prescribed in Ryan v. Noble, 95 Fla. 830, 116 So. 766, and similar cases.
*633 Defendant's counsel, when cross-examining plaintiff, introduced in evidence a statement signed by plaintiff shortly after the accident and while plaintiff was in the hospital. On cross-examination the plaintiff admitted the signature was hers, but said she had no recollection of having signed it and said the statement contained untrue statements. Plaintiff's counsel, on rebuttal, presented a witness who testified as follows:
"Q. Do you remember being out at the hospital here at Fort Lauderdale at the time this thing I have in my hand was signed, that has got you signature on it? A. Yes.
"Q. Did you write that out yourself? A. No, I didn't.
"Q. Where did you get it? A. From the insurance adjuster Norton.

"Q. How come you took it out to Mrs. Higgins? A. He wanted me to take the statement out and get her to sign it.
"Q. Do you remember what day you took it out there? A. The day she had the cast put on."
Following this testimony a motion was made to declare a mistrial on the ground that the voluntary reference to "the insurance adjuster Norton" was prejudicial error. The court denied the motion but promptly instructed the jury as follows:
"Gentlemen, this witness said she got this statement from an insurance adjuster. I want to tell you at this time that you are not to regard in any sense the question of whether or not she ever saw an insurance adjuster. You must base your verdict solely on the evidence exclusive to any consideration or reference to insurance as to who is to pay the damages, if any damage is recovered. In other words, free your minds entirely from the question of insurance in this case. Whether or not there is any insurance is no concern of yours and should not enter into your deliberations in any way."
The above language is almost exactly what the lower court told the jury in Rosenberg v. Coman, 134 Fla. 768, 184 So. 238, and concerning which we said, quoting from Wall v. Little, 102 Fla. 1015, 136 So. 676, 677:
"The rule is well established in practically all jurisdictions that, when improper evidence is elicited or when improper evidence is volunteered, or when improper conduct on the part of attorneys occurs, the charge of the trial court directing the jury to disregard such testimony, or such conduct, cures the error and corrects the irregularity."
We, therefore, hold that the lower court acted promptly and correctly and, if such conduct was improper, his charge correct ed such irregularity.
In the preparation of the briefs counsel for both parties have in many instances failed to observe our Rule 20, requiring that when opinions of this Court are cited the page and number of both the Florida Reports and Southern Reporter should be given. It would be of great help to the Court if this Rule were more closely followed. There is another matter that we wish to call to counsel's attention. In incorporating in the record in this Court the reporter's transcript of proceedings in the lower court, the original page numbers are changed to conform to the transcript here, without changing the index page numbers. This results in considerable confusion in our examination of the evidence.
We point out these matters  not in a critical sense  but in order for the bar to know that a closer observation of these matters would be of great assistance to us in the disposition of the causes before us.
Affirmed.
HOBSON, C.J., and THOMAS and ROBERTS, JJ., concur.