403 So.2d 1325 (1981)
John M. PURDY and His Wife, Appellants,
v.
GULF BREEZE ENTERPRISES, INC., et al., Appellees.
No. 58325.
Supreme Court of Florida.
July 30, 1981.
Rehearing Denied October 19, 1981.
*1326 Dennis J. Plews, Law Offices of Robert H. Schultz, Bradenton, for appellants.
Andrew D. Owens, Jr., of Dickinson, O'Riorden, Gibbons, Quale, Shields & Carlton, Sarasota, for appellees.
BOYD, Justice.
This is an appeal from a judgment rendered by the circuit court in Manatee County awarding the appellants $7,937.20 for damages incurred as a result of an automobile accident. Because the trial judge upheld the constitutionality of sections 627.736(3)[1] and 627.7372,[2] Florida Statutes *1327 (1977), we have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution (1972).
On November 27, 1977 the appellants were driving on their side of the road when they were struck head-on by a car owned by Gulf Breeze Enterprises, Inc. and driven by Dana Blackwell. Ms. Blackwell was attempting to pass a slower vehicle on a curved portion of the road. Mr. Purdy sustained various physical injuries and the car, owned by Mrs. Purdy, was totally destroyed. Mr. Purdy received $4,102.20 in personal injury protection (PIP) payments from his own insurance company. The appellants then filed suit against Ms. Blackwell, her parents since she was a minor, and Gulf Breeze Enterprises, Inc. for the damages they incurred as a result of Ms. Blackwell's negligence. During the course of the trial a dispute arose as to the admissibility of evidence relating to Mr. Purdy's receiving PIP benefits from his insurer. Both sides agreed to postpone arguments concerning the constitutionality of the collateral source statute, section 627.7372, Florida Statutes (1977), and the effect it would have on the amount of damages awarded until after the trial was over. At the end of the trial the jury awarded Mr. Purdy $11,318.00 as compensation for his injuries and Mrs. Purdy $500.00 as compensation for the loss of her car. At a post trial hearing the trial judge upheld the constitutionality of sections 627.736(3) and 627.7372, Florida Statutes (1977). The judge calculated that the amount awarded to Mr. Purdy by the jury should be reduced by the amount Mr. Purdy received in PIP benefits less the amount of premiums he paid to obtain that coverage for that year. In accordance with this calculation, the final judgment was entered on December 10, 1979 awarding Mr. Purdy $7,437.20. The Purdys timely filed a notice of appeal four days later.
Appellants contend the statutes violate the right to access to courts provision of the Florida Constitution. Art. I, § 21, Fla. Const. They rely on our previous holding
that where a right of access to the courts for redress for a particular injury has been provided by statutory law predating the adoption of the Declaration of Rights of the Constitution of the State of Florida, or where such right has become a part of the common law of the State pursuant to Fla. Stat. § 2.01, F.S.A., the Legislature is without power to abolish such a right without providing a reasonable alternative to protect the rights of the people of the State to redress for injuries, unless the Legislature can show an overpowering public necessity for the abolishment of such right, and no alternative method of meeting such public necessity can be shown.
Kluger v. White, 281 So.2d 1, 4 (Fla. 1973). This holding does not apply to these statutes since they do not abolish any previous right of access to courts.
Basically, sections 627.736(3) and 627.7372 reduce the amount of damages injured plaintiffs can recover from tortfeasors by the amount of benefits they have received from collateral sources. Appellants argue these statutes therefore abolish the common law collateral source rule that injured plaintiffs are entitled to recover the full amount of their damages from tortfeasors regardless of the amount of benefits they may have received from collateral sources such *1328 as insurance proceeds. See International Sales-Rentals Leasing Co. v. Nearhoof, 263 So.2d 569 (Fla. 1972); Tuggle v. Government Employees Insurance Co., 207 So.2d 674 (Fla. 1968) (Barns, J., dissenting). This argument assumes that common law plaintiffs were allowed to keep the full amount of money they recovered in a lawsuit, which was not the case. Their right of full recovery was subject to their insurer's right of subrogation. That is, as a matter of equity it was the insurers who were entitled to bring suit against tortfeasors for reimbursement of any payments made to an insured. See generally Atlantic Coast Line Ry. v. Campbell, 104 Fla. 274, 139 So. 886 (1932); Cappucio, Subrogation in Florida, 21 U.Miami L.Rev. 240, 247-49 (1966).
This right of subrogation was statutorily recognized by the Florida Automobile Reparations Reform Act, sections 627.730-627.741, Florida Statutes (1971), when it was first enacted. Section 627.736(3) was previously a provision concerning an insurer's right to reimbursement of any payments made to an insured who subsequently recovered against a tortfeasor. § 627.736(3), Fla. Stat. (1975).[3] Its main purpose was to prevent injured plaintiffs from receiving double recovery. Cf. Aetna Casualty & Surety Co. v. Bortz, 271 So.2d 108 (Fla. 1972) (this was the purpose behind the Workmen's Compensation Subrogation Law, § 440.39(3), Fla. Stat. (1971), after which § 627.736(3), Fla. Stat. (1975) was patterned). This provision entitled the injured plaintiff to an equitable distribution of the costs of litigation which resulted in a lot of litigation. See, e.g., American Fire & Casualty Co. v. Oller, 313 So.2d 67 (Fla. 4th DCA 1975); White v. Reserve Insurance Co., 299 So.2d 661 (Fla. 1st DCA 1974), cert. denied, *1329 308 So.2d 103 (Fla. 1975); Reyes v. Banks, 292 So.2d 39 (Fla. 4th DCA 1974). One district court judge suggested the legislature revisit the statute because it encouraged litigation. State Farm Mutual Automobile Insurance Co. v. Mance, 292 So.2d 52 (Fla. 3d DCA 1974) (Barkdull, J., concurring). We held that paragraphs (a) and (b) were repugnant to each other. Williams v. Gateway Insurance Co., 331 So.2d 301 (Fla. 1976).
In 1976 the legislature revamped this subsection to take care of these problems by passing the current provision. Ch. 76-266, § 4, Laws of Fla. Now insurers are no longer entitled to reimbursement of any personal injury payments made to injured persons. To prevent the injured persons from receiving double recovery, the legislature has provided that any PIP benefits they have received from their insurers will be set off from the amount they are entitled to recover from the tortfeasors. Although this provision primarily benefits the tortfeasor, it is in keeping with the "no-fault" concept of the Florida Automobile Reparations Reform Act. The benefits obtained by the tortfeasors will enure to their insurance carriers. Supposedly these benefits will eventually be shared by all carriers without the need of litigation. Lee and Polk, Insurance, 31 U.Miami L.Rev. 1061, 1071-73 (1977). This should result in lower premiums.
In 1977 the legislature extended this concept to all other insurers providing non-PIP benefits by requiring the court to "admit into evidence the total amount of all collateral sources which have been paid to the claimant prior to the commencement of the trial. The court shall also admit into evidence any amount paid by the claimant to secure such collateral sources." § 627.7372(1), Fla. Stat. (1977). At the post-trial hearing the appellants' attorney argued that this last sentence included all the premiums an injured plaintiff paid in his life for every type of disability insurance. The trial judge rejected this argument and held that only those costs necessary for obtaining the PIP insurance for the year of the accident could be considered. This holding fails to take into account that some policies are issued for a period of time, such as semi-annually, other than yearly. We believe the statute refers to the costs incurred by claimants to secure the actual policies from which they received benefits for whatever period of time the policy is in effect.
From this analysis we conclude that sections 627.736(3) and 627.7372, Florida Statutes (1977), do not deprive persons injured in automobile accidents of their right of access to the courts. These sections merely prevent injured plaintiffs from recovering monies which, equitably speaking, belong to their insurers. Furthermore, there is nothing in the law which prevents injured persons from waiving their rights to receive insurance benefits and suing the tortfeasor for the full amount of their damages. Section 627.7372 sets off only those benefits which actually have been paid. Section 627.736(3) sets off benefits which are "paid or payable," which we interpret to include only those benefits a person is entitled to under his or her contract after he or she files a claim. Thus the right of access to the courts is left completely unimpaired.
We disagree with appellants' claim that these statutes are unconstitutional in that they violate the equal protection clause, article I, section 2, Florida Constitution, or are procedural and not substantive, article V, section 2(a), Florida Constitution. These statutes do make a distinction between plaintiffs who are injured in automobile accidents and plaintiffs who are injured in other types of accidents. The statutes do not apply to the latter category. But since plaintiffs who are injured in other types of accidents are not assured of receiving double recovery, we do not see how plaintiffs who are injured in automobile accidents are discriminated against. We find that classification bears a reasonable relation to the legislative goal of reducing suits among automobile insurance carriers and therefore does not violate the equal protection clause of the constitution. See Lasky v. State Farm Insurance Co., 296 So.2d 9 (Fla. 1974).
*1330 Appellant's argument that these statutes violate article V, section 2(a), Florida Constitution in that they are procedural and have not been adopted by this court is without merit. See Pinillos v. Cedars of Lebanon Hospital Corp., 403 So.2d 365 (Fla. 1981).
Appellants next claim the trial court erred in limiting their counsel's questioning of prospective jury members. During voir dire their attorney asked the following question: "Do any of you feel that your civil duty sitting on a jury and then rendering your verdict, if you render a verdict for the plaintiff, would have any influence on your personal life, especially with regard to insurance?" The defense immediately moved for a mistrial. The judge denied the motion for a mistrial but told appellants' counsel that he could not proceed any further along this line of questioning. After the jury was sworn appellants' counsel made the following proffer:
I will proffer I would have inquired of the prospective jurors whether they had any feelings toward any influence their decision may have on automobile insurance premiums. Those questions were asked solely for the purpose of determining whether any particular juror felt they had a financial interest in this particular case or whether they felt their verdict would have a financial consequence to them; and further, if they did so feel whether they could put that outside the courtroom and decide the case on its own merits.
Record on Appeal at 118.
This Court has consistently held that plaintiffs are entitled to question prospective jurors about any financial interest they may have in an insurance company to determine whether they would be biased or prejudiced. This right was balanced against a defendant's right not to have the jury apprised of his status as an insured. E.g., Blanton v. Butler, 81 So.2d 745 (Fla. 1955); Springer v. Morris, 74 So.2d 781 (Fla. 1954); Lambert v. Higgins, 63 So.2d 631 (Fla. 1953); Ryan v. Noble, 95 Fla. 830, 116 So. 766 (1928). However, the defendant's right not to have the subject of insurance mentioned to the jury was abolished by our landmark case, Shingleton v. Bussey, 223 So.2d 713 (Fla. 1969), wherein we stated:
[W]e are cognizant that the primary reason advanced in those jurisdictions which have sustained "no joinder clauses" in the area of liability insurance is that such a clause serves to prevent prejudice to the insurer through the prophylactic effect of isolating from the jury's consideration any knowledge that coverage for the insured exists. Such a result is deemed desirable because of the notion that a jury is prone to find negligence or to augment damages, if it thinks that an affluent institution such as an insurance company will bear the loss. See Appleman, 8 Insurance Law and Practice, § 4861. While we will not go so far as to assert that the above proposition has been all but obliterated by the more recent indications to the effect that the injection of insurance does not operate to increase the size of jury verdicts, we do think the stage has now been reached where juries are more mature. Accordingly, a candid admission at trial of the existence of insurance coverage, the policy limits of same, and an otherwise aboveboard revelation of the interest of an insurer in the outcome of the recovery action against insured should be more beneficial to insurers in terms of diminishing their overall policy judgment payments to litigating beneficiaries than the questionable "ostrich head in the sand" approach which may often mislead juries to think insurance coverage is greater than it is.
Id. at 718.
Thus the plaintiff's interest in receiving a fair trial by an impartial jury is no longer counter balanced by the defendant's interest in not having the subject of insurance mentioned to the jury. It would not have been an abuse of discretion if the judge had allowed the appellants' attorney to question the jurors about whether they felt there could be a relationship between the decision they would have to render and the amount of premiums they would have to pay. King *1331 v. Westlake, 264 Ark. 555, 572 S.W.2d 841 (1978). "[T]he impact of monetary award in negligence cases upon automobile liability insurance rates may be a proper subject for exploration upon voir dire examination of a jury panel." Graham v. Waite, 23 App.Div.2d 628, 257 N.Y.S.2d 629, 631 (App. Div. 1965). Since there is no longer any reason for not mentioning insurance in front of jurors, an attorney may question prospective jurors about any possible prejudice or bias they may have whether it be for or against insurance companies.
That is not to say that parties have an absolute right to ask any questions they want on voir dire concerning a potential juror's possible bias for or against insurance companies. Parties only have the right "to conduct a reasonable examination... ." Fla.R.Civ.P. 1.431(b). The extent to which parties may examine prospective jurors on voir dire lies within the trial judge's discretion. Essix v. State, 347 So.2d 664 (Fla. 3d DCA 1977); Mizell v. New Kingsley Beach, Inc., 122 So.2d 225 (Fla. 1st DCA 1976). We do not find that the trial judge clearly abused his discretion in this case. Therefore the appellant's second contention is without merit.
We affirm the judgment of the circuit court.
It is so ordered.
OVERTON and McDONALD, JJ., concur.
SUNDBERG, C.J., and ADKINS, J., concur as to the voir dire issue, but dissent as to the collateral source issue.
ALDERMAN, J., concurs with the portion of the opinion which holds the collateral source statutes constitutional and concurs in result with the remainder of the opinion.
ENGLAND, J., dissents with an opinion with which ADKINS, J., concurs.
ENGLAND, Justice, dissenting.
I disagree completely with that portion of the majority opinion which holds the collateral source statutes constitutional, but my impending departure from the Court does not afford me the time necessary to respond to the majority in the polished manner I would prefer. In the time available I can only hastily summarize my views.
One statute provides a collateral source rule for all court claims to the extent only of personal injury protection benefits. The second statute is limited to automobile accident cases, but extends the collateral source rule to a broad variety of sources. Both statutes violate the "access to courts" provision of Florida's constitution, and the second statute surely denies equal protection of the law.
The majority supports these statutes on the basis of a subrogation theory. I cannot see the universal relevance of that theory. Subrogation is certainly not available with respect to non-residents who are injured, since Florida law may or may not control the subrogation of insurers in other states with respect to their insureds. With respect to the second statute, I cannot imagine how subrogation will work for the variety of collateral sources identified in the statute. For example, benefits received from social security or disability policies provided by other public agencies or entities are treated as collateral source benefits. I fail to see how an insurance company can be said to have subrogation rights against governmental agencies as a matter of law. (The best that could happen is a statutory waiver or an express statutory provision granting such a right of recovery.) The second statute also treats contracts providing other benefits as a collateral source, yet those contracts may or may not have been entered into in Florida and they may or may not provide for subrogation. Surely the parties are entitled to contract for or against subrogation privileges. Consequently, I cannot see that a subrogation doctrine in any way validates either statute.
With respect to equal protection, there are obvious difficulties with extending to the variety of collateral sources a prohibition of dual recovery simply for automobile accidents. The majority's rationale, that non-auto accident victims are not assured of double recovery, is somewhat vague as a *1332 justification for passing an equal protection test. Plaintiffs who are injured in automobile accidents are not "assured" of a double recovery. In fact, I would think that their recovery entitlements are quite beside the point.
ADKINS, J., concurs.
NOTES
[1] (3) INSURED'S RIGHTS TO RECOVERY OR SPECIAL DAMAGES IN TORT CLAIMS.  No insurer shall have a lien on any recovery in tort by judgment, settlement, or otherwise for personal injury protection benefits, whether suit has been filed or settlement has been reached without suit. An injured party who is entitled to bring suit under the provision of s. 627.737, or his legal representative, shall have no right to recover any damages for which personal injury protection benefits are paid or payable. The plaintiff may prove all of his special damages notwithstanding this limitation, but if special damages are introduced in evidence, the trier of facts, whether judge or jury, shall not award damages for personal injury protection benefits paid or payable. In all cases in which a jury is required to fix damages, the court shall instruct the jury that the plaintiff shall not recover such special damages for personal injury protection benefits paid or payable.
[2] COLLATERAL SOURCES OF INDEMNITY. 

(1) In any action for personal injury or wrongful death arising out of the ownership, operation, use or maintenance of a motor vehicle, the court shall admit into evidence the total amount of all collateral sources which have been paid to the claimant prior the commencement of the trial. The court shall also admit into evidence any amount paid by the claimant to secure such collateral source.
(2) For purposes of this section, "collateral sources" means any payments made to the claimant, or on his behalf, by or pursuant to:
(a) The United States Social Security Act; any federal, state, or local income disability act; or any other public programs providing medical expenses, disability payments, or other similar benefits.
(b) Any health, sickness, or income disability insurance; automobile accident insurance that provides health benefits or income disability coverage; and any other similar insurance benefits except life insurance benefits available to the claimant, whether purchased by him or provided by others.
(c) Any contract or agreement of any group, organization, partnership, or corporation to provide, pay for, or reimburse the costs of hospital, medical, dental, or other health care services.
(d) Any contractual or voluntary wage continuation plan provided by employers or any other system intended to provide wages during a period of disability.
[3] (3) INSURER'S RIGHTS OF REIMBURSEMENT AND INDEMNITY. 

(a) No subtraction from personal protection insurance benefits will be made because of the value of a claim in tort based on the same bodily injury, but after recovery is realized upon such a tort claim, a subtraction will be made to the extent of the recovery, exclusive of reasonable attorneys' fees and other reasonable expenses incurred in effecting the recovery, but only to the extent that the injured person has recovered said benefits from the tort-feasor or his insurer or insurers. If personal protection insurance benefits have already been received, the claimant shall repay to the insurer or insurers, out of the recovery, a sum equal to the benefits received, but not more than the recovery, exclusive of reasonable attorneys' fees and other reasonable expenses incurred in effecting the recovery, but only to the extent that the injured person has recovered said benefits from the tort-feasor or his insurers or insurer. The insurer or insurers shall have a lien on the recovery to this extent. No recovery by an injured person or his estate for loss suffered by him will be subtracted in calculating benefits due a dependent after the death, and no recovery by a dependent for loss suffered by the dependent after the death will be subtracted in calculating benefits due the injured person except as provided in paragraph (1)(c).
(b) The insurer shall be entitled to reimbursement of any payments made under the provisions of this subsection, based upon such equitable distribution of the amount recovered as the court may determine, less the pro rata share of all court costs expended by the plaintiff in the prosecution of the suit to recover such amount against a third-party tort-feasor, including a reasonable attorney's fee for the plaintiff's attorney. The proration of the reimbursement shall be made by the judge of a trial court handling the suit to recover damages in the third-party action against the tort-feasor upon application therefor and notice to the carrier.
(c) A personal protection insurer with a right of reimbursement under this section, if suffering loss from inability to collect such reimbursement out of a payment received by a claimant upon a tort claim, is entitled to indemnity from one who, with notice of the insurer's interest, made such a payment to the claimant without making the claimant and the insurer joint payees as their interests may appear, or without obtaining the insurer's consent to a different method of payment.
(d) In the event an injured party or his legal representative is entitled to bring suit against a third party tort-feasor under the provisions of § 627.737 and fails to bring such suit against such third pay tort-feasor within one year after the last payment of any benefits under subsection (1), the insurer of such injured party, upon giving thirty days' written notice to such injured party, shall have the right to bring suit against such third party, in its own name or in the name of the injured person or his legal representative, to recover the amount of the benefits paid pursuant to the provisions of this section to or for the benefit of such injured person. However, the prosecution or settlement of such suit without the consent of the injured person or his legal representative shall be without prejudice to such person.