473 So.2d 831 (1985)
BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC., Appellant,
v.
Timothy L. Matthews, et al., Appellees.
No. BD-67.
District Court of Appeal of Florida, First District.
August 9, 1985.
*832 Edward P. Nickinson, III and Doreen Spadorcia of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Pensacola, for Appellant.
John N. Boggs of Barron, Redding, Boggs, Hughes, Fite, Bassett & Fensom, Panama City, for appellees.
William W. Tharpe, Jr. and Lisa S. Santucci, Dept. of Ins., Tallahassee, for Florida Dept. of Ins., amicus curiae.
ERVIN, Judge.
Blue Cross and Blue Shield of Florida, Inc., hereinafter Blue Cross, appeal from a final order denying its motion to intervene. We affirm.
Plaintiff Paul C. Tyson filed a personal injury action against appellees Timothy Matthews and J.N. Corporation Company, a foreign corporation, alleging that on March 26, 1983, appellee Matthews negligently and carelessly operated his automobile, thereby causing serious injuries to Tyson, resulting in extensive hospitalization, medical and nursing care and treatment. Tyson is insured under a group hospital and major medical contract through Tieco, Inc., his employer, which is issued by Blue Cross and Blue Shield of Alabama.[1] Blue Cross provided $18,844.44 in medical and hospital benefits arising from the accident between Mr. Tyson and Matthews, and thereafter moved to intervene in the personal injury action pursuant to a subrogation clause in the insurance contract, purportedly allowing Blue Cross the right to recover any medical benefit proceeds which Mr. Tyson might recover from appellee.[2]
*833 Although Blue Cross was aware of the collateral source statutes in Florida, sections 627.7372 and 627.736(3), which appear to preclude Blue Cross from asserting its subrogation rights, it argued that these statutory provisions are unconstitutional as applied to it, or, alternatively, that they are preempted by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1381. The trial judge found Sections 627.736(3) and 627.7372, Florida Statutes, constitutional and that the statutes are not preempted by ERISA, and therefore denied the petition for leave to intervene.
Blue Cross first argues that Sections 627.736(3) and 627.7372, Florida Statutes,[3] violate that provision of the Florida Constitution guaranteeing access to courts. See Article I, Section 21, Florida Constitution. One's right to access, however, is not unlimited:
[W]here a right of access to the courts for redress for a particular injury has been provided by statutory law predating the adoption of the Declaration of Rights of the Constitution of the State of Florida, or where such right has become a part of the common law of the State pursuant to Fla. Stat. § 2.01, F.S.A., the Legislature is without power to abolish such a right without providing a reasonable alternative to protect the rights of the people of the State to redress for injuries, unless the Legislature can show an overpowering public necessity for the abolishment of such right.
Kluger v. White, 281 So.2d 1, 4 (Fla. 1973).
Sections 627.736(3) and 627.7372 reduce the amount of damages an injured plaintiff may recover from tortfeasors by the amount of benefits received from collateral sources, including any sickness, income disability, or health insurance such as that provided by Blue Cross. In other words, the amount of damages a plaintiff can recover is subject to a deduction for any and all collateral sources arising out of an automobile accident. The legislative enactment was designed to curb litigation and encourage settlements in the automobile insurance area. See Williams v. Gateway Insurance Co., 331 So.2d 301 (Fla. 1976); Lee & Polk, Insurance, 31 U.Miami L.Rev. 1061 (1977) (1976 Development in Florida Law).
Blue Cross asserts that as a result of the collateral source statutes, its right to common law subrogation has been abolished and the legislature has failed to provide a reasonable alternative as required by Kluger; therefore the statutes in question are unconstitutional. In Purdy v. Gulf Breeze Enterprises, Inc., 403 So.2d 1325 (Fla. 1981), the Florida Supreme Court addressed this same argument, finding that sections 627.736(3) and 627.7372 do not deprive plaintiffs injured in automobile accidents their right of access to courts since the purpose of the statutes was simply to *834 bar injured persons from receiving double benefits. The court observed that by barring the plaintiffs' carriers from seeking reimbursement for personal injury protection benefits paid to their insureds, litigation costs would be reduced, thereby leading, presumably, to reduced automobile insurance premiums. 403 So.2d at 1329.
Here, a health insurance company, Blue Cross, that has the status neither as an injured party plaintiff, nor as an automobile insurance carrier, is attempting to assert through subrogation its rights to collateral source proceeds. We find this purported distinction without any substantial significance. Blue Cross's right to subrogation is not an absolute, but rather a derivative right. The right arises out of the contract of insurance and is derived from that of the insured alone. Atlantic Coast Line R. Co. v. Campbell, 104 Fla. 274, 139 So. 886, 888 (1932). Therefore, if the insured, the injured party plaintiff, has no right to recover proceeds from collateral sources, his insurer similarly has no right of recovery under its subrogation clause. See Molyett v. Society National Life Insurance Co., 452 So.2d 1114 (Fla. 2d DCA 1984). Because the collateral source statutes cannot be considered as depriving injured party plaintiffs of their constitutional right of access to courts under Purdy, neither can they be considered as depriving subrogee Blue Cross of this same constitutional right, in that Blue Cross merely "stands in the shoes" and succeeds to only those rights held by its insured.[4]
We find appellant's remaining argument on this point[5] without merit and affirm the trial judge's finding that the collateral source statutes are not unconstitutional as applied to Blue Cross.
Appellant's second point on appeal is that Sections 627.736(3) and 627.7372, Florida Statutes, are preempted by ERISA. ERISA is a comprehensive federal statute which regulates employee pension and welfare plans. The act is "the result of a congressional endeavor to curb the funding and disclosure abuses of employee pension and welfare benefit plans by establishing minimum federal standards." Wadsworth v. Whaland, 562 F.2d 70, 73-74 (1st Cir.1977),[6]cert. denied, 435 U.S. 980, 98 S.Ct. *835 1630, 56 L.Ed.2d 72 (1978). As a result, ERISA "imposes upon pension plans a variety of substantive requirements relating to participation, funding, and vesting." Metropolitan Life Insurance Co. v. Massachusetts, ___ U.S. ___, ___, 105 S.Ct. 2380, 2385, 85 L.Ed.2d 728 (1985). However, ERISA does not impose any federal regulation in terms of the substantive content of benefit plans. Id. at ___, 105 S.Ct. at 2385; Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90-91, 103 S.Ct. 2890, 2896-97, 77 L.Ed.2d 490, 497 (1983).
ERISA does, however, provide that it shall "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Appellant argues that the preemption provision supersedes state law (Sections 627.736(3) and 627.7372, Florida Statutes), since these laws relate to the employee welfare benefit plan,[7] the insurance contract. Assuming preliminarily that the plan at bar is part of an ERISA plan and that the collateral source statutes relate to such plan,[8] we find that subsequent provisions in ERISA prevent the application of the preemption doctrine to the case at bar.
Although 29 U.S.C. § 1144(a) suggests broad preemption of state laws, this provision is modified by a later saving clause exempting "any law of any State which regulates insurance" from the preemption provision of section 1144(a) (e.s.). See 29 U.S.C. § 1144 (b)(2)(A). The latter provision reaffirms the authority of the states to regulate insurance. Wadsworth, 562 F.2d at 75.[9] However, the saving clause is limited in its reach by 29 U.S.C. § 1144 (b)(2)(B), the deemer clause, which states that no"employee benefit plan ... shall be deemed an insurance company or other insurer, ... or to be engaged in the business of insurance ... for purposes of any law of any State purporting to regulate insurance companies, insurance contracts... ." According to the court in Eversole v. Metropolitan Life Insurance Co., 500 F. Supp. 1162, 1169 (C.D.Cal. 1980):
The deemer clause bars a state from treating a plan as if it were an insurance company because the drafters must have assumed that if the plan were an insurance company, it would still be subject to state law due to the savings clause. The effect of the deemer clause is to prohibit *836 a state from regulating an employee benefit plan even though the plan serves as a self-insurer on its benefits. Wadsworth, supra at 77. Thus, the deemer clause distinguishes between true insurance companies, which are subject to state law, and employee benefit plans, which are exempt from state regulation even though they exhibit some of the same risk-distributing characteristics as traditional insurance.
(e.s.)
Eversole held that "[t]he rule that emerges from these cases is that any law directly regulating an employee benefit plan is preempted, but laws regulating an insurance company or policy purchased from an insurance company are saved from preemption." Id. at 1170 (e.s.). More recently, in Metropolitan Life Insurance Company v. Massachusetts, ___ U.S. ___, ___, 105 S.Ct. 2380, 2390, 85 L.Ed.2d 728 (1985), The United States Supreme Court implicitly adopted the California District Court's approach by observing:
By exempting from the saving clause laws regulating insurance contracts that apply directly to benefit plans, the deemer clause makes explicit Congress' intention to include laws that regulate insurance contracts within the scope of the insurance laws preserved by the saving clause. Unless Congress intended to include laws regulating insurance contracts within the scope of the insurance saving clause, it would have been unnecessary for the deemer clause explicitly to exempt such laws from the saving clause when they are applied directly to benefit plans.
(e.s.)
Therefore, the crucial issue to be decided is whether the state law in question regulating insurance applies directly to benefit plans. If so, the state law is preempted. In this case, the collateral source statutes at issue indirectly regulate the terms of insurance contracts. They affect the subrogation clauses of insurance contracts and the rights of an insurance carrier which has paid out certain benefits. The statutes at issue, however, do not apply directly to any purported benefit welfare plan. Therefore, the deemer clause is inapplicable and the saving clause would exempt the state law from federal preemption.[10]
AFFIRMED.
SHIVERS and JOANOS, JJ., concur.
NOTES
[1] Blue Cross and Blue Shield of Florida, Inc. by contract with the Alabama Corporation.
[2] The subrogation clause is as follows:

SECTION XI - SUBROGATION
In the event of payment or provision otherwise by the Company of any benefits under this Contract, the Company shall, to the extent thereof, be subrogated and shall succeed to all rights of recovery (whether in contract, tort, or otherwise) which the Member or any other person has against any person or organization and shall be subrogated and succeed to the proceeds of any settlement or judgment that may result from the exercise of any such rights of recovery. Upon payment or provision by the Company of any such benefits, the Member or any other person having any rights of recovery or proceeds therefrom shall execute and deliver such proceeds or such instruments or papers and do whatever else is necessary to secure to the Company such rights of recovery and proceeds and shall do nothing to prejudice such rights.
[3] Section 627.736(3), Florida Statutes, provides in pertinent part:

(3) INSURED'S RIGHTS TO RECOVERY OF SPECIAL DAMAGES IN TORT CLAIMS.  No insurer shall have a lien on any recovery in tort by judgment, settlement, or otherwise for personal injury protection benefits, whether suit has been filed or settlement has been reached without suit. An injured party who is entitled to bring suit under the provisions of ss. 627.730-627.7405, or his legal representative, shall have no right to recover any damages for which personal injury protection benefits are paid or payable.
Section 627.7372, Florida Statutes, provides in pertinent part:
(1) In any action for personal injury or wrongful death arising out of the ownership, operation, use, or maintenance of a motor vehicle, the court shall admit into evidence the total amount of all collateral sources paid to the claimant, and the court shall instruct the jury to deduct from its verdict the value of all benefits received by the claimant from any collateral source.
(2) For purposes of this section, "collateral sources" means any payments made to the claimant, or on his behalf, by or pursuant to:
* * * * * *
(b) Any health, sickness, or income disability insurance: automobile accident insurance that provides health benefits or income disability coverage; and any other similar insurance benefits except life insurance benefits available to the claimant, whether purchased by him or provided by others.
(e.s.)
[4] We note that the foregoing analysis assumes that subrogation is a "right [that] has become a part of the common law of the State pursuant to Fla. Stat. § 2.01", under Kluger, 281 So.2d at 4 (e.s.). We need not directly address this point since we find that under Purdy there is no constitutional violation.
[5] Appellants also argue that sections 627.736(3) and 627.7372 violate the equal protection clause of the Florida Constitution. We find that the legislation bears a reasonable relation to its stated purposes and is not violative of the equal protection clause. See Sasso v. Ram Property Management, 452 So.2d 932 (Fla. 1984).
[6] The congressional findings and declaration of policy referred to in Wadsworth are stated in 29 U.S.C. § 1001(a):

(a) The Congress finds that the growth in size, scope, and numbers of employee benefit plans in recent years has been rapid and substantial; that the operational scope and economic impact of such plans is increasingly interstate; that the continued well-being and security of millions of employees and their dependents are directly affected by these plans; that they are affected with a national public interest; that they have become an important factor affecting the stability of employment and the successful development of industrial relations; that they have become an important factor in commerce because of the interstate character of their activities, and of the activities of their participants, and the employers, employee organizations, and other entities by which they are established or maintained; that a large volume of the activities of such plans is carried on by means of the mails and instrumentalities of interstate commerce; that owing to the lack of employee information and adequate safeguards concerning their operation, it is desirable in the interests of employees and their beneficiaries, and to provide for the general welfare and the free flow of commerce, that disclosure be made and safeguards be provided with respect to the establishment, operation, and administration of such plans; that they substantially affect the revenues of the United States because they are afforded preferential Federal tax treatment; that despite the enormous growth in such plans many employees with long years of employment are losing anticipated retirement benefits owing to the lack of vesting provisions in such plans; that owing to the inadequacy of current minimum standards, the soundness and stability of plans with respect to adequate funds to pay promised benefits may be endangered; that owing to the termination of plans before requisite funds have been accumulated, employees and their beneficiaries have been deprived of anticipated benefits; and that it is therefore desirable in the interests of employees and their beneficiaries, for the protection of the revenue of the United States, and to provide for the free flow of commerce, that minimum standards be provided assuring the equitable character of such plans and their financial soundness.
[7] Under 29 U.S.C. § 1002(1), an employee welfare benefit plan is one which is

established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers... .
(e.s.)
[8] At oral argument there was discussion over whether the plan was an employee welfare benefit plan under ERISA. Although the record before us is sparse on this issue, we will restrict our analysis to the critical issue that, assuming ERISA applies, does it preempt the state law, specifically the collateral source statutes? Finding that there is no federal preemption, we do not address the question of what type of evidence is needed to establish an ERISA plan.
[9] The McCarran-Ferguson Act, 15 U.S.C. §§ 1011-15, providing that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, ... unless such Act specifically relates to the business of insurance", § 1012(b), also reaffirms the policy of state primacy in the regulation of insurance. According to the District Court in Eversole v. Metropolitan Life Insurance Co., 500 F. Supp. at 1168:

ERISA's savings clause and McCarran-Ferguson both serve the same national policy and utilize the same terminology to define that which is left to the states: laws that "regulate insurance" under ERISA and laws "regulating the business of insurance" under McCarran-Ferguson.
[10] Cf. Metropolitan Life Insurance Company v. Massachusetts, ___ U.S. ___, ___, 105 S.Ct. 2380, 2390, 85 L.Ed.2d 728 (1985), wherein the United States Supreme Court concluded that state regulation regarding the substantive content of insurance contracts are laws that regulate insurance, and thus are within the scope of the saving clause. Id., n. 18, and see cases cited therein for this proposition.