WOLF, J.
Appellant challenges the dismissal of her declaratory judgment action. We find merit in two of appellant’s challenges. Namely, the trial court (1) incorrectly determined the exclusive jurisdiction over the cause of action was in federal court, and (2) prematurely dismissed the complaint based on the preemption provisions of the Employment Retirement Income Security Act (ERISA).[1] We reverse and remand for further proceedings.
After successfully settling a personal injury action in federal court, appellant filed a complaint in state court requesting a declaratory judgment prohibiting appellee from seeking subrogation against the settlement proceeds. Specifically, appellant asserted appellee had not met the pre-subrogation notice requirements outlined in subsections 768.76(7) and (9), Florida Statutes (2009) (the collateral sources statute), and thus, had waived its right to subrogation pursuant to the provisions of that statute.
In response, appellee filed a motion to dismiss alleging (1) the state statute would not apply to the underlying plan for benefits because the plan was an ERISA plan and, thus, the state statute was preempted by 29 U.S.C. § 1144(a) (2009); and (2) the trial court lacked subject matter jurisdiction because 29 U.S.C. § 1132(e)(1) granted exclusive jurisdiction to the United States District Court to hear civil matters related to ERISA. The trial court agreed and dismissed the action.
29 U.S.C. § 1132(e)(1)
We first discuss the jurisdictional question. ERISA provides that “[ejxcept for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by ... a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title.” 29 U.S.C. § 1132(e)(1).
29 U.S.C. § 1132(a)(1)(B), however, permits state courts to hear actions in which a participant or a beneficiary of an ERISA plan seeks to enforce his or her rights, to recover benefits, or to clarify his or her rights to future benefits under the terms of the plan.
Appellee asserts the underlying declaratory action is not an action in which appellant is seeking to enforce or clarify her rights or to recover benefits under her *1055 plan, and thus, the action must be heard in federal court. In Arana v. Ochsner Health Plan, 338 F.3d 433, 438 (5th Cir.2003), the Fifth Circuit considered a similar declaratory action seeking to prohibit subrogation based on a Louisiana anti-subrogation statute and held the action fell under the concurrent jurisdiction exception of ERISA because:
[the] claim can fairly be characterized either as a claim “to recover benefits due to him under the terms of his plan” or as a claim “to enforce his rights under the terms of the plan.” As it stands, Arana’s benefits are under something of a cloud, for OHP is asserting a right to be reimbursed for the benefits it has paid for his account. It could be said, then, that although the benefits have already been paid, Arana has not fully “recovered” them because he has not obtained the benefits free and clear of OHP’s claims. Alternatively, one could say that Arana seeks to enforce his rights under the terms of the plan, for he seeks to determine his entitlement to retain the benefits based on the terms of the plan.
(Footnote omitted). We agree with the reasoning of the Fifth Circuit and find the trial court erred in dismissing the declaratory action based on 29 U.S.C. § 1132(e)(1).
29 U.S.C. § 1144(b)
In addition to the foregoing, ERISA contains a preemption provision which reads in pertinent part:
(a) Supersedure; effective date
Except as provided in subsection (b) of this section, the provisions of this sub-chapter and subehapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan....
(b) Construction and application
[[Image here]]
(2)(A) Except as provided in subpara-graph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities. [Otherwise known as the savings clause ].
(B) Neither an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies. [Otherwise known as the deemer clause ].
29 U.S.C. § 1144(a)-(b) (2009). In considering how to apply this express preemption language, Justice O’Connor in Pilot Life Insurance Co. v. Dedeaux, 481 U.S. 41, 45, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), summarized:
If a state law “relate[s] to ... employee benefit plan[s],” it is pre-empted. The saving clause excepts from the pre-emption clause laws that “regulat[e] insurance.” The deemer clause makes clear that a state law that “purports] to regulate insurance” cannot deem an employee benefit plan to be an insurance company.
(citations omitted). Thus, in determining if the underlying action is preempted by this provision of ERISA, this court must apply the three-part test. First, we must determine if the state law is related to employee benefit plans. Next, we must decide if the state law supporting the' action is a law “regulating insurance” so as to exempt the action from preemption. If so, this court then must ensure the law *1056 does not apply to self-insured employee benefit plans, thereby triggering the ERISA preemption once again as to those plans.
In conducting our analysis, we remain cognizant of the apparent purpose of the deemer and savings clauses which is to allow the state to regulate insurance practices but to reserve regulatory jurisdiction over self-insurance plans.
A Related to an Employee Benefit Plan
First, both parties concede the first prong has been met because the underlying state statute, subsections 768.76(7) and .(9), Florida Statutes (2009), creates subro-gation notice requirements that relate to ERISA benefit plans. However, the inquiry does not end there.

B. Savings Clause

Once it is determined that the state law applies to employee benefit plans, it must next be decided if the state law is excluded from preemption, or saved, because it “regulates” insurance. In Pilot, the Supreme Court provided guidance on this prong, noting the “savings clause” must be given its common-sense meaning. 481 U.S. at 48, 107 S.Ct. 1549.' Second, the court in Pilot looked to case law interpreting the phrase “business of insurance” under the McCarran-Ferguson Act. Id. This law, taken as a whole, provided three criteria for determining whether a practice would fall under the “business of insurance.” Id. Namely:
“[F]irst, whether the practice has the effect of transferring or spreading a policyholder’s risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry.” Union Labor Life Ins. Co. v. Pireno, 458 U.S. 119, 129, 102 S.Ct. 3002, 3009, 73 L.Ed.2d 647 (1982) (emphasis in original).
Id. at 48^9,107 S.Ct. 1549.
However, more recently, in Kentucky Ass’n of Health Plans, Inc. v. Miller, 538 U.S. 329, 341-42, 123 S.Ct. 1471, 155 L.Ed.2d 468 (2003), the Supreme Court receded from the McCarran-Ferguson factors, stating:
Today we make a clean break from the McCarran-Ferguson factors and hold that for a state law to be deemed a “law ... which regulates insurance” under § 1144(b)(2)(A), it must satisfy two requirements. First, the state law must be specifically directed toward entities engaged in insurance. See Pilot Life, supra, at 50, 107 S.Ct. 1549, UNUM [Life Ins. Co. of America v. Ward, 526 U.S. 358] supra, at 368, 119 S.Ct. 1380 [143 L.Ed.2d 462 (1999) ]; Rush Prudential [HMO, Inc. v. Moran, 536 U.S. 355], supra, at 366, 122 S.Ct. 2151 [153 L.Ed.2d 375 (2002) ]. Second ... the state law must substantially affect the risk pooling arrangement between the insurer and the insured. Kentucky’s law satisfies each of these requirements.
The majority of cases addressing state subrogation and collateral source statutes have determined that they are laws regulating insurance. In FMC Corp. v. Holliday, 498 U.S. 52, 60-61, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), the Supreme Court considered whether a Pennsylvania anti-subrogation statute was a law “regulating insurance” and held:
There is no dispute that the Pennsylvania law falls within ERISA’s insurance saving clause.... Section 1720 directly controls the terms of insurance contracts by invalidating any subrogation provisions that they contain. See Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S., at 740-741, 105 S.Ct., at 2389-2390. It does not merely have an impact on *1057 the insurance industry; it is aimed at it. See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 50, 107 S.Ct. 1549, 1554, 95 L.Ed.2d 39 (1987). This returns the matter of subrogation to state law.
See also Singh v. Prudential Health Care Plan, Inc., 335 F.3d 278, 286 (4th Cir.2003) (holding a subrogation prohibition in Maryland’s HMO Act was a state law regulating insurance pursuant to Miller and was, thus, “saved” from preemption); Medical Mutual of Ohio v. deSoto, 245 F.3d 561 (6th Cir.2001) (holding California’s anti-subrogation statute regulated insurance and was, thus, saved from preemption).
Appellee relies on Levine v. United Healthcare Corp., 402 F.3d 156 (3d Cir.2005), which held that New Jersey’s anti-subrogation statute was not a statute “regulating insurance” because it did not explicitly regulate only insurance but applied to other collateral sources. We can find no other case that draws such a narrow distinction, nor do we believe such an interpretation is warranted. While the Florida law also affects other collateral source providers, it does not negate its intent to regulate insurance providers. Any potential effect on other entities intended to be exempt from state regulation by ERISA is covered by the “deemer clause” discussed more fully below. Thus, we believe that a more reasonable interpretation is that the statute must be primarily related to the insurance industry. The Florida statute meets this interpretation.
Florida’s collateral sources statute has the practical effect of regulating the insurance industry’s right to subrogation through its procedural notice requirements. Specifically, section 768.76(2)(a) defines “collateral sources” as:
... any payments made to the claimant, or made on the claimant’s behalf, by or pursuant to:
1. The United States Social Security Act, except Title XVIII and Title XIX; any federal, state, or local income disability act; or any other public programs providing medical expenses, disability payments, or other similar benefits, except those prohibited by federal law and those expressly excluded by law as collateral sources.
2. Any health, sickness, or income disability insurance; automobile accident insurance that provides health benefits or income disability coverage; and any other similar insurance benefits, except life insurance benefits available to the claimant, whether purchased by her or him or provided by others.
3. Any contract or agreement of any group, organization, partnership, or corporation to provide, pay for, or reimburse the costs of hospital, medical, dental, or other health care services.
4. Any contractual or voluntary wage continuation plan provided by employers or by any other system intended to provide wages during a period of disability.
§ 768.76(2)(a)(l)-(4), Fla. Stat. (footnotes omitted). In addition to the foregoing, the statute requires collateral source providers respond within 30 days of notification from a claimant of his or her intent to file suit against a tortfeasor, and failure to promptly comply waives the right of subrogation. § 768.76(6)-(7), Fla. Stat.
Thus, the law substantially affects the risk pooling arrangement between the insurer and the insured by imposing notice limitations on the right to subrogation which, if not followed, effectively alter “the scope of permissible bargains between insurers and insureds.” Kentucky Ass’n of Health Plans, Inc., 538 U.S. at 338-39, 123 S.Ct. 1471.[2] In explaining what was meant *1058 by affecting “the risk pooling arrangement” the court explained:
We emphasize that conditions on the right to engage in the business of insurance must also substantially affect the risk pooling arrangement between the insurer and the insured to be covered by ERISA’s saving clause. Otherwise, any state law aimed at insurance companies could be deemed a law that “regulates insurance,” contrary to our interpretation of § 1144(b)(2)(A) in Rush Prudential, 536 U.S., at 364, 122 S.Ct. 2151, 153 L.Ed.2d 375. A state law requiring all insurance companies to pay their janitors twice the minimum wage would not “regulate insurance,” even though it would be a prerequisite to engaging in the business of insurance, because it does not substantially affect the risk pooling arrangement undertaken by insurer and insured.... We have never held that state laws must alter or control the actual terms of insurance policies to be deemed “laws ... which regulate] insurance” under § 1144(b)(2)(A); it suffices that they substantially affect the risk pooling arrangement between insurer and insured. By expanding the number of providers from whom an insured may receive health services, AWP laws alter the scope of permissible bargains between insurers and insureds ....
Id. The regulation at issue is directly related to insurance practices and procedures. The fact that it relates to notice provisions rather than constituting a total bar to subrogation does not change its character as an insurance regulation. Accordingly, the savings clause of ERISA exempts section 768.76, Florida Statutes, from express preemption.

C. Deemer Clause

The last necessary step in a 29 U.S.C. § 1144(b) ERISA preemption analysis involves the interpretation and application of the deemer clause. Specifically, even where the state law is “saved” from preemption pursuant to 29 U.S.C. § 1144(b)(2)(A), the deemer clause may exclude the law from the reach of the savings clause if the plan effected is a self-insured employee benefit plan as opposed to an underwritten insurance plan. FMC Corp., 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356.
The deemer clause prohibits state laws from deeming employee benefit plans described in 29 U.S.C. § 1003(a) “to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance ... for purposes of any law of any State purporting to regulate insurance companies, insurance contracts,.... ” 29 U.S.C. § 1144(b)(2)(B).
29 U.S.C. § 1003 defines self-insured employee benefit plans and states:
(a) Except as provided in subsection (b) or (c) of this section and in sections 1051, 1081, and 1101 of this title, this subchapter shall apply to any employee benefit plan if it is established or maintained—
(1) by any employer engaged in commerce or in any industry or activity affecting commerce; or
(2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or
(3) by both.
Thus, the “deemer clause” will only apply to those insurance plans which are self- *1059 funded by either the employer or a union. Id.; FMC Corp., 498 U.S. at 61, 111 S.Ct. 403. In a self-funded insurance plan, the employer assumes the risk of providing medical benefits to employees with its own funds. 29 U.S.C. § 1003; FMC Corp., 498 U.S. at 61, 111 S.Ct. 403. The employer provides a plan, similar to insured plans, setting out the eligibility and coverage limits. These plans, similar to insured employee benefit plans, are covered by ERISA unless exempted. 29 U.S.C. § 1003.
In FMC Corp., the Supreme Court elucidated on the distinction between plans covered by the deemer clause, and those which are not, noting:
We read the deemer clause to exempt self-funded ERISA plans from state laws that “regulat[e] insurance” within the meaning of the saving clause. By forbidding States to deem employee benefit plans “to be an insurance company or other insurer ... or to be engaged in the business of insurance,” the deemer clause relieves plans from state laws “purporting to regulate insurance.” As a result, self-funded ERISA plans are exempt from state regulation insofar as that regulation “relatefs] to” the plans. State laws directed toward the plans are pre-empted because they relate to an employee benefit plan but are not “saved” because they do not regulate insurance. State laws that directly regulate insurance are “saved” but do not reach self-funded employee benefit plans because the plans may not be deemed to be insurance companies, other insurers, or engaged in the business of insurance for purposes of such state laws. On the other hand, employee benefit plans that are insured are subject to indirect state insurance regulation. An insurance company that insures a plan remains an insurer for purposes of state laws “purporting to regulate insurance” after application of the deemer clause. The insurance company is therefore not relieved from state insurance regulation. The ERISA plan is consequently bound by state insurance regulations insofar as they apply to the plan’s insurer.
FMC Corp., 498 U.S. at 61, 111 S.Ct. 403. In reaching this holding, the Supreme Court acknowledged the decision “ ‘results in a distinction between insured and uninsured plans, leaving the former open to indirect regulation while the latter are not.’ ” Id. at 62, 111 S.Ct. 403 (quoting Metropolitan Life Ins. Co., 471 U.S. at 747, 105 S.Ct. 2380).[3]
Thus, as discussed in FMC Corp. and Metropolitan Life, the crucial question in applying the deemer clause to a law other *1060 wise saved from preemption is whether the action is directed toward a self-funded employee benefit plan. Recognizing the importance of such a distinction, appellee asserts the underlying plan is a self-funded employee benefit plan, citing language in the Plan Summary, and notes the plan purports to be self-insured; however, the trial court never made a finding as to this matter. Further, the record does not include the actual plan for benefits or any affidavits asserting the plan was self-funded. Under these circumstances, further proceedings concerning the nature of the plan are warranted. Accordingly, we reverse for factual findings on the matter.
REVERSED AND REMANDED.
DAVIS and WETHERELL, JJ„ concur.

. We have reviewed appellant’s assertion that the trial court erred in setting aside the default judgment; however, we find no abuse of discretion. Wells Fargo Bank, N.A. v. Jidy, 44 So.3d 162 (Fla. 3d DCA 2010) (citing Lazcar Int'l, Inc. v. Caraballo, 957 So.2d 1191, 1192 (Fla. 3d DCA 2007)).

. Here, the Plan Summary imposes a similar notice requirement on a claimant, but does *1058 not foreclose the right of subrogation in the event the collateral source provider fails to respond to claimant’s notice. Thus, we reject the notion that the statute does no more than enforce the provisions outlined in the plan.

. We recognize this court previously interpreted the deemer clause in a different manner in Blue Cross & Blue Shield of Florida, Inc. v. Matthews, 473 So.2d 831 (Fla. 1st DCA 1985) (overruled on other grounds). In Matthews, this court considered the appellant's attempt to intervene in a personal injury action against Matthews based on its alleged right of subrogation. Id. at 835. At the time, section 627.736(3), Florida Statutes required the damage award be deducted by any amounts contributed from an insurer and foreclosed appellant's right to subrogation. Id. However, the Plan contained a subrogation clause allowing appellant to seek subro-gation for money spent on Matthews' care. Id. In an attempt to get around the statutory subrogation bar, appellant alleged ERISA preempted the state law banning subrogation. After considering ERISA’s express preemption language, the court stated the deemer clause did not apply to the self-funded employee benefit plan because the statute did not expressly, on its face, apply "directly to any purported benefit welfare plan.” Id. at 836. FMC Corp. was decided after Matthews, and thus, Matthews has been effectively overruled. Matthews is also distinguishable on two grounds. First, the court in Matthews quashed the lower court’s holding on other grounds and then considered the preemption issue, rendering the discussion on preemption *1060 dicta. Id. at 834. Second, die court in Matthews considered the preexisting subrogation statute which defined "collateral source” as "any health, sickness or income disability insurance,” whereas the definition under section 768.76 includes "any contract by any corporation to pay for medical services.” Thus, the current version of the statute expressly imposes limitations on self-funded employee benefit plans rather than "insurance.” Accordingly, the current version of the statute speaks more directly to the type of plan brought back under preemption by the deem-er clause and would render a different result than the one reached in Matthews.