717 So.2d 569 (1998)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant,
v.
Julie KLINGLESMITH, Appellee.
No. 97-2919.
District Court of Appeal of Florida, Fifth District.
August 6, 1998.
Rehearing Denied September 23, 1998.
Gregory J. Donoghue of Kane, Williams, Singer, Planck & Donoghue, P.A., Rockledge, for Appellant.
R. Keith Williams of R. Keith Williams, P.A., West Melbourne, and Bruce Jacobus, Jr., of Jacobus and Fielding, P.A., Melbourne, for Appellee.
Joseph H. Williams of Troutman, Williams, Irvin, Green & Helms, P.A., Winter Park, as Amicus Curiae of the Florida Academy of Trial Lawyers Association on behalf of Appellee.
THOMPSON, Judge.
State Farm Mutual Automobile Insurance Company ("State Farm") appeals a final judgment awarding damages to Julia Klinglesmith ("Klinglesmith"). State Farm contends that the trial court erred in failing to set off the entire amount of Klinglesmith's medical payments ("medpay") benefits against the jury verdict. We affirm.
Klinglesmith was injured in an automobile accident and sued State Farm seeking uninsured motorist benefits. She obtained a jury award of $15,214.88 in damages, of which $8,255.00 was for future medical expenses. State Farm moved to determine setoffs, and the trial court set off $10,000.00 for personal injury protection ("PIP") benefits pursuant to section 627.736(3), Florida Statutes, and $1,331.04 for medpay benefits paid pursuant to section 627.7372(2)(b), Florida Statutes. The trial court, however, denied State Farm's motion for set off of $3,668.96 in remaining medpay benefits which were unpaid and available to Klinglesmith for future medical expenses. The court ruled that this amount could not be setoff pursuant to section 627.7372(2)(b).
State Farm argues that the trial court incorrectly relied on section 627.7372, the collateral source statute, to deny the setoff for unpaid medpay benefits. State Farm contends that because medpay benefits must be paid pursuant to section 627.736(4)(f) in a PIP claim, section 627.736(3) permits a setoff of medpay benefits paid and payable in the future. Section 627.736(3), Florida Statutes (1991), reads in part:
An injured party who is entitled to bring suit ... shall have no right to recover any damages for which personal injury protection benefits are paid or payable. The plaintiff may prove all of his special damages notwithstanding this limitation, but if special damages are introduced in evidence, the trier of facts, whether judge or jury, shall not award damages for personal injury protection benefits paid or payable. In all cases in which a jury is required to fix damages, the court shall instruct the jury that the plaintiff shall not recover such special damages for personal injury protections benefits paid or payable.
State Farm argues that the logic and reasoning in Kokotis v. DeMarco, 679 So.2d 296 (Fla. 5th DCA 1996), should apply in this *570 case. In Kokotis, this court held "that `payable' as used in this statute includes expenses which have not yet accrued but which will result from the covered injury." Id. at 297. Thus, argues State Farm, the medical payment benefits should be used as a setoff against Klinglesmith's award for future medical expenses. The issue, then, is whether medpay benefits are a collateral source or the equivalent of PIP benefits.
The basis for State Farm's equating medpay benefits with PIP benefits, section 627.736(4)(f), actually demonstrates that medpay benefits are a collateral source. That statute provides that if PIP medical benefits have paid 80 percent of an insured's medical expenses, see section 627.736(1)(a), medpay benefits, "if available in a policy of motor vehicle insurance," must be applied to the remaining 20 percent even if PIP benefits have not been exhausted. Thus, if an insured opts to purchase medpay benefits to supplement the PIP coverage, see State Farm v. Swearingen, 590 So.2d 506 (Fla. 4th DCA 1991), rev. denied, 599 So.2d 1280 (Fla. 1992), the statute requires that collateral source to be applied first, rather than other medical insurance the insured may have, see Christian v. Colonial Penn Insurance Co., 537 So.2d 623 (Fla. 4th DCA 1988).
Section 627.7372, Florida Statutes (1991), reads in part:
Section 627.7372 Collateral sources of indemnity.
(1) In any action for personal injury or wrongful death arising out of the ownership, operation, use, or maintenance of a motor vehicle, the court shall admit into evidence the total amount of all collateral sources paid to the claimant, and the court shall instruct the jury to deduct from its verdict the value of all benefits received by the claimant from any collateral source.
(2) For purposes of this section, "collateral sources" means any payments made to the claimant, or on his behalf, by or pursuant to:
* * * * * *
(b) Any health, sickness, or income disability insurance; automobile accident insurance that provides health benefits or income disability coverage; and any other similar insurance benefits except life insurance benefits available to the claimant, whether purchased by him or provided by others.
As a collateral source, only medpay benefits previously paid may be set off against a damage award. Therefore, the trial court in this case correctly denied State Farm a setoff for $3,668.96 in unpaid medpay benefits.
AFFIRMED.
ANTOON, J., concurs.
HARRIS, J., dissents, with opinion.
HARRIS, Judge, dissenting.
I respectfully dissent.
The issue presented by this case is narrow. If the insured elects to increase his or her protection against medical expenses to cover the 20% not covered by the PIP medical payments provision, is this PIP med-pay supplement[1] controlled by our decision in Kokotis v. DeMarco, 679 So.2d 296 (Fla. 5th DCA 1996)? The parties stipulated below, because of Kokotis, that the entire $10,000 PIP benefits would be setoff against Plaintiff's recovery even though the PIP benefits had not been exhausted at the time of the judgment. The question before us now is whether that portion of the $5,000 in additional medical payment coverage provided by Klinglesmith's policy which was not subject to a claim at the time of the final judgment should likewise be deducted from the recovery for future medical expenses.
*571 To answer this question, we should reexamine Kokotis. We held in Kokotis that the setoff provision contained in section 627.737 (the tort exemption statute) rather than setoff provision contained in section 627.7372 (the collateral source statute) should control in this type of litigation. We then considered section 627.736(3), which provides that a setoff will be applied against a judgment containing an award for special damages (past and future medical expenses) in the amount of "personal injury protection benefits paid or payable" and then construed this language to include "expenses which have not yet accrued but which will result from the covered injury."
In Pizzarelli v. Rollins, 704 So.2d 630 (Fla. 4th DCA 1997), the Fourth District adopted a more limited definition of what is payable by restricting it to "those medical bills incurred before trial which had not been processed by the PIP carrier at the time the offset was sought." The Pizzarelli court arrived at this definition by equating "payable" with "available to [the insured]" and concluded that a claim wasn't payable until justly due. Our Kokotis definition was criticized for lacking dictionary support. I believe, however, that the definition depends not only on the term being defined but also on the context in which the term is being considered. The Pizzarelli court defined "payable" in the context of a medical bill and arrived at the not surprising result that a medical bill is payable when due. In Kokotis, on the other hand, we considered the term "payable" in the statutory context of "any damages for which personal injury protection benefits are paid or payable." Are damages not yet incurred but which will occur for future treatment caused by injuries resulting from an insured accident "payable" pursuant to a personal injury protection provision in the insurance policy? We answered in the affirmative. For dictionary support, we should have cited Black's Law Dictionary: "Payable .... legally enforceable ... Payable may therefore signify an obligation to pay at a future time, but, when used without qualification, term normally means that the debt is payable at once, as opposed to `owing'."
Are there qualifications in the statutory scheme related to no-fault liability that support the notion that the legislature intended that the term "payable" as used in the statute included the obligation to pay future medical expenses as incurred? I think so. In the same provision in which the "paid or payable" provision appears [section 627.736(3)], the legislature took away from the insurers their subrogation rights for personal injury protection benefits which they are required to pay "whether suit has been filed or settlement has been reached without suit." In other words, there are no subrogation rights even for medical payments incurred after judgment. To prevent double recovery by the injured party, the legislature then provided that such party could not recover damages against the tortfeasor for medical payments "paid or payable" under an insurance policy. To define "payment" as Pizzarelli has, in effect limits the legislative policy against double recovery by applying it only if the medical payments are incurred before the judgment. In other words, double recovery is judicially sanctioned if the judgment is entered before the claims for medical payments are filed even though the claimant has previously been compensated for these damages in the final judgment. It is such notions as double recovery for a single injury that fuels the movement for tort reform.
An insurance policy is not like a lottery ticket in which the "winner" is entitled to the entire pot. An insurance policy is a hedge against future, unknown damages. If an accident occurs, the insured is not automatically entitled to the face amount of the policy. The insured must prove the amount that he or she has been damaged so that full, but not double, recovery can be achieved.[2] The justification for taking subrogation rights away from the insurance industry for personal injury protection benefits paid as a result of an automobile accident is that the industry will not also have to pay such damages as a part of the tort claim if PIP benefits are available.
*572 This case, being an uninsured motorist claim, dramatically points out the problem created by the Pizzarelli definition. Under the Pizzarelli approach, State Farm is required to pay future medical expenses as a part of the tort judgment and will continue to be responsible for the same damages as they occur in the future. If this is the law, then denying the insurance industry its subrogation rights without an offsetting benefit may be unjustifiably denying it access to the judicial process.
In for a penny, in for a pound. If we were correct in Kokotis, the same logic applies to the supplementary medical payments provision involved in this case. This provision also involves "personal injury protection benefits" for which the insurer is denied subrogation rights and represents a double payment for damages already compensated for in the judgment. The majority's holding that med-pay benefits are not covered by section 627.736 by implication holds that the insurers retain their common law right of subrogation as to med-pay benefits. See Rodriguez v. Travelers Insurance Co., 367 So.2d 687 (Fla. 3d DCA 1979), approved, 387 So.2d 341 (Fla. 1980). This seems contrary to the policy expressed by the no-fault law.
I agree with the Fourth District that the Kokotis/Pizzarelli issue should be, and it now appears that it will be, resolved by the supreme court. Oral argument is currently set for October 5,1998.
NOTES
[1] Appellee and the Academy of Florida Trial Lawyers, as amicus, urge that we distinguish between PIP benefits and "med-pay" benefits in determining the right of setoff against a judgment which includes damages for future medical expenses because they are contained in separate provisions of the policy. Florida's no-fault law mandates that the policy include personal injury protection benefits covering 80% of the medical expenses suffered by those covered by the policy and involved in an accident. The med-pay provision is designed to pay the otherwise uninsured 20% of the medical expenses. Thus, reference to med-pay as a PIP supplement appears appropriate.
[2] The argument that double recovery in the amount of the supplement to the PIP benefits contained in the policy should be approved because the insured paid a premium for this protection is not convincing. The insured also paid a premium for the basic PIP benefits.