761 So.2d 294 (2000)
Jane ROLLINS, et al., Petitioners,
v.
Michael PIZZARELLI, et al., etc., Respondents.
No. SC92080.
Supreme Court of Florida.
May 4, 2000.
Rehearing Denied June 19, 2000.
*295 James K. Clark of James K. Clark & Associates, Miami, Florida; and Garrison M. Dundas of Brennan, Hayskar, Jefferson, Walker & Schwerer, Ft. Pierce, Florida, for Petitioners.
Julie H. Littky-Rubin of Lytal, Reiter, Clark, Fountain & Williams, West Palm Beach, Florida, for Respondents.
Sharon Lee Stedman of Sharon Lee Stedman, P.A., Orlando, Florida, for Amicus Curiae Allstate Insurance Company.
Dock A. Blanchard of Blanchard, Merriam, Adel & Kirkland, P.A., Ocala, Florida, for Amicus Curiae The Academy of Florida Trial Lawyers.

OPINION ON REHEARING
PER CURIAM.
Upon consideration of the respondents' motion for rehearing, rehearing is granted. The opinion issued in this case on February 4, 1999, is withdrawn, and the following opinion is substituted in its place.
We have for review Pizzarelli v. Rollins, 704 So.2d 630 (Fla. 4th DCA 1997), in which the district court recognized conflict with the opinion in Kokotis v. DeMarco, 679 So.2d 296 (Fla. 5th DCA 1996), and certified the following question to this Court:

WHETHER THE TERM "PAID OR PAYABLE" IN SECTION 627.736(3), FLORIDA STATUTES (SUPP.1996), *296 SHOULD BE DEFINED AS "THAT WHICH HAS BEEN PAID, OR PRESENTLY EARNED AND CURRENTLY OWING" SO THAT THE STATUTORY LANGUAGE OF SECTION 627.736 WILL NOT BE INTERPRETED TO PERMIT ANY REMAINING PERSONAL INJURY PROTECTION BENEFITS TO BE USED FOR SETOFFS FOR FUTURE COLLATERAL SOURCES.
704 So.2d at 633. We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution. For the reasons expressed below, we answer the certified question in the affirmative.

FACTS
The record in this case is silent regarding many of the relevant facts, as it fails to provide a complete transcript of the trial. Additionally, the district court opinion does not provide a factual background. Based on the parties' representations at oral argument and in their briefs, we are able to glean the following facts. Carlene Pizzarelli, the daughter of Michael and Michelle Pizzarelli, was injured in an accident when she was a passenger in a car that was hit by another car driven by Dasha Marie Cates and owned by Jane Rollins. The Pizzarellis sued Rollins and Cates. Medical bills incurred prior to trial by the Pizzarellis in the amount of $13,212.60 were admitted into evidence without objection. Section 627.736(1)(a), Florida Statutes (1991), provides that personal injury protection ("PIP") benefits will cover 80% of medical bills. The Pizzarellis had $10,000 in PIP coverage.
During the trial, the issue arose as to whether the jury should be advised that $524.78 in additional PIP benefits were available to the Pizzarellis to defray the cost of future medical expenses. The defendants, Rollins and Cates, argued that the plain language of section 627.736(3), Florida Statutes (1991),[1] required the court to instruct the jury not to compensate the Pizzarellis for PIP benefits that had been paid or were to be paid in the future. The Pizzarellis argued that section 627.7372, Florida Statutes (1991),[2] applied and entitled Rollins and Cates to a setoff only for those PIP benefits that had been paid up until the time of trial.
The trial judge ruled that because the PIP payments were made a part of the record of the case through the payout ledger, the future PIP benefits issue could be taken up post-trial. The jury awarded the Pizzarellis $5000 in future medical expenses and $48 in lost earnings. The jury also found that the victim suffered permanent *297 injury and awarded the Pizzarellis $20,000 for past and future pain and suffering. After trial, both parties stipulated that there remained $524.78 in available PIP benefits.
Section 627.736(3) provides that "An injured party who is entitled to bring suit under the provisions of §§ 627.730-627.7405, or his legal representative, shall have no right to recover any damages for which personal injury protection benefits are paid or payable." The trial court concluded that the remaining $524.78 in PIP benefits fit the definition of "payable" and therefore set off the $524.78 from the $5000 future medical expense award.
On appeal, the Fourth District Court of Appeal agreed with the trial court that section 627.736(3) applied rather than section 627.7372. However, the Fourth District disagreed with the trial court as to the definition of "payable," reasoning that under the plain language of the statute, "payable" benefits do not include those for future medical expenses that have not yet been incurred. See Pizzarelli, 704 So.2d at 633. The district court reversed and instructed the trial court on remand to reinstate the jury's verdict for the full amount of future damages and to award reasonable costs and attorney's fees under section 768.79, Florida Statutes (1991).[3]See Pizzarelli, 704 So.2d at 633.

ANALYSIS
The question presented by this case is whether the Legislature, by using the term "payable" in section 627.727(3), intended to limit the setoff from damages only to expenses that had been incurred and were due and owing at the time of the judgment or whether the Legislature intended the setoff to be coextensive with the remaining amount of PIP benefits. The Fifth District concluded in Kokotis that "`payable' as used in this statute includes expenses which have not yet accrued but which will result from the covered injury." 679 So.2d at 297. In contrast, the Fourth District concluded that the term "payable" in section 627.727(3) means only those medical expenses that have been incurred prior to trial but not yet paid or processed by the PIP carrier. See Pizzarelli, 704 So.2d at 632.
The Legislature's intent must be determined primarily from the language of the statute. See Aetna Cas. & Sur. Co. v. Huntington Nat'l Bank, 609 So.2d 1315, 1317 (Fla.1992). Accordingly, "[w]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." Modder v. American Nat'l Life Ins. Co., 688 So.2d 330, 333 (Fla.1997) (quoting Holly v. Auld, 450 So.2d 217, 219 (Fla.1984)). "Ambiguity suggests that reasonable persons can find different meanings in the same language." Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla.1992). We find that because the term "payable," as used by the Legislature in section 627.736(3), is susceptible to more than one reasonable interpretation, it is necessary to resort to principles of statutory construction to ascertain legislative intent. *298 See Forsythe, 604 So.2d at 455; Holly, 450 So.2d at 219.
The term "payable" is not defined by statute. When a term is undefined by statute, "[o]ne of the most fundamental tenets of statutory construction" requires that we give a statutory term "its plain and ordinary meaning." Green v. State, 604 So.2d 471, 473 (Fla.1992). When necessary, the plain and ordinary meaning "can be ascertained by reference to a dictionary." Id. Further, it is a well-settled rule of statutory construction that in the absence of a statutory definition, courts can resort to definitions of the same term found in case law. See State v. Mitro, 700 So.2d 643, 645 (Fla.1997); State v. Hagan, 387 So.2d 943, 945 (Fla.1980); Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc., 693 So.2d 602 (Fla. 2d DCA 1997).
The term "payable" has been defined in this Court's case law as "meaning `capable of being paid; suitable to be paid; admitting or demanding payment; justly due; legally enforceable.'" In re Advisory Opinion to the Governor, 74 Fla. 250, 254, 77 So. 102, 103 (1917). Black's Law Dictionary provides this same definition, but with an important amplification that "when used without qualification, [the] term normally means that the debt is payable at once, as opposed to `owing.'" Black's Law Dictionary 1128 (6th ed.1990).
In accounting parlance, the term "payable," as in "accounts payable," has a similar usage. An "account payable" is defined in Black's Law Dictionary, in part, as a "liability representing an amount owed to a creditor, usually arising from purchase of merchandise or materials and supplies; not necessarily due or past due." Id. at 18 (emphasis supplied).
Thus, the most common usage of "payable" strongly suggests a limitation to incurred expenses that have not yet been paid at the time of trial, rather than potential future expenses that have not yet been incurred. Because a plaintiff's future medical expenses have not yet been incurred, these expenses cannot be presented to the PIP carrier for payment and therefore do not represent a liability or a "payable" benefit of the PIP carrier.
This definition is also consistent with the usage given to the term "payable" in the very next subsection of the PIP statute to describe when PIP benefits are "due." § 627.736(4).[4] That subsection provides that PIP benefits are "due and payable as loss accrues, upon receipt of reasonable proof of such loss." Id. (emphasis supplied). This use of the term "payable" in section 627.736(4) supports the construction of the term as referring to those medical expenses that have been already been incurred. This interpretation is thus consistent with the axioms of statutory construction that statutes must be read together to ascertain their meaning, see Forsythe, 604 So.2d at 455; City of Boca Raton v. Gidman, 440 So.2d 1277, 1282 (Fla.1983), and that the same meaning should be given to the same term within subsections of the same statute. See WFTV, Inc. v. Wilken, 675 So.2d 674, 678 (Fla. 4th DCA 1996).
Further, as the Fourth District's opinion in Rollins points out, "[w]hen the Florida Legislature wishes to provide for set-offs for future benefits it well knows how to express itself." Pizzarelli, 704 So.2d at 633. For example, section 440.39(3)(a), Florida Statutes (Supp.1996), provides workers' compensation carriers with claims against responsible third-party tort-feasors *299 for "future benefits to be paid" to the injured employee. In the context of arbitration of medical malpractice cases, the Legislature has provided that "[d]amages for future economic losses shall be... offset by future collateral source payments." § 766.207(7)(c), Fla. Stat. (1995). The clear intent of both these sections, expressed by the use of the terms "future benefits" and "future collateral source payments," is to require setoff of future collateral benefits. Neither section uses the more limited term "payable." Just as the legislative use of different terms in different portions of the same statute is evidence that different meanings were intended, see State v. Mark Marks, P.A., 698 So.2d 533, 541 (Fla.1997), the use of the more limited term "payable" in section 627.736(3) is evidence that the Legislature did not intend to set off future benefits.
We recognize that when the statutory language is clear, legislative history cannot be used to alter the plain meaning of the statute. See Aetna, 609 So.2d at 1317. However, when the statutory language is susceptible to more than one meaning, legislative history may be helpful in ascertaining legislative intent. See Magaw v. State, 537 So.2d 564, 566 (Fla.1989); cf. Hawkins v. Ford Motor Co., 748 So.2d 993 (Fla.1999) (using legislative history to support an interpretation of the plain meaning of the statute).
The legislative history in this case is most persuasive. A legislative committee report on the 1976 amendments to the PIP statute states that the changes were intended to replace the "complicated system of equitable distribution of PIP benefits" with a system under which a plaintiff could "plead and prove all of his special damages" but would not be awarded PIP benefits that "have been paid or are currently payable." Summary of No-Fault Conference Comm. Rep. on Fla. CS for HB 2825 (June 8, 1976) (available at Fla. Dep't of State, Bureau of Archives & Records Management, Fla. State Archives, ser. 69, carton 319, Tallahassee, Fla.) (emphasis supplied) [hereinafter Summary of Report].
Under the former equitable distribution scheme, the tortfeasor received no offset for PIP benefits. Instead, the PIP carrier received a pro rata share of the plaintiffs recovery based on an equitable distribution formula, but only PIP "payments made" to the insured were subject to reimbursement based on equitable distribution. § 627.736(3)(b), Fla. Stat. (1975); see Williams v. Gateway Ins. Co., 331 So.2d 301, 304-05 (Fla.1976).
There is nothing in the legislative history of the 1976 amendments to indicate that, in replacing the complicated equitable distribution scheme and eliminating the PIP carrier's lien for payments made, the Legislature intended to grant tortfeasors a complete windfall by allowing a setoff against the verdict of all remaining PIP benefits. In fact, the committee report specifically used the modifier "currently" payable, which evidences its intent to limit the setoff to benefits that were owed by the PIP carrier because the expenses had been incurred. Summary of Report, supra. Thus, the legislative history supports the interpretation we give to the term "payable."
An interpretation of a statutory term cannot be based on this Court's own view of the best policy. See State v. Ashley, 701 So.2d 338, 343 (Fla.1997). However, even if we were to indulge in policy considerations, the competing policies favor an interpretation of the term "payable" that is limited to medical expenses that have been incurred but have not yet been paid by the PIP carrier. Generally, the PIP carrier is not a party to the litigation and is not bound by the jury's determination of the amount of damages, including the amount awarded by the jury for the plaintiffs future expenses.[5] Instead, the *300 PIP carrier has a separate right to contest the reasonableness and necessity of the medical expenses at the time the expenses are incurred in the future. Additionally, the insurer might not even be in business when the plaintiff's medical expenses are incurred.
If we interpreted the term "payable" as the defendants suggest, the injured victim would have no guarantee that the PIP carrier would in fact pay the remaining benefits when the expenses are actually incurred, yet the jury's verdict in the plaintiff's favor would be prematurely reduced by those remaining benefits. There would be no guarantee that the plaintiff would ever be made completely whole for her injuries. See Haugen v. Town of Waltham, 292 N.W.2d 737, 740 (Minn.1980).[6] Under this interpretation, the entity receiving the windfall is the tortfeasor, who obtains a setoff from the jury's verdict by the amount of the remaining benefits, but the insured has no concomitant immediate right to receive those remaining PIP benefits.
An additional and important canon of statutory construction applicable in this case is that statutory provisions altering common-law principles must be narrowly construed. See Ady v. American Honda Fin. Corp., 675 So.2d 577, 581 (Fla.1996). Both PIP benefits and medpay benefits are collateral sources, that is, first-party benefits for which the insured has paid a separate premium. The common-law rule prohibited both the introduction of evidence of collateral insurance benefits received, and the setoff of any collateral source benefits from the damage award. See Gormley v. GTE Prods. Corp., 587 So.2d 455, 457-59 (Fla.1991). As an alteration of the common law, the statutory provisions that allow the introduction into evidence and setoff of collateral insurance benefits must be narrowly construed.
Lastly, we disagree with the dissents in this case that our prior case law construing section 627.737(3) mandates a contrary result. In Purdy v. Gulf Breeze Enterprises, Inc., 403 So.2d 1325 (Fla.1981), we upheld the constitutionality of section 627.737(3) because it simply reduced the amount of damages injured plaintiffs can recover by the amount of PIP benefits "they have received." Purdy, 403 So.2d at 1327. In discussing the provisions of section 627.737(3) in effect at that time, we stated that "[t]o prevent the injured persons from receiving double recovery, the legislature has provided that any PIP benefits they have received from their insurers will be set off from the amount they are entitled to recover from the tortfeasors." Purdy, 403 So.2d at 1329 (emphasis supplied). Thus, in Purdy there was an implicit assumption that "payable" was limited to those expenses already incurred.
More recently, in Mansfield v. Rivero, 620 So.2d 987 (Fla.1993), we confronted the issue of whether a plaintiff, by failing to claim PIP benefits, could avoid the setoff provisions of section 627.736(3). The parties had stipulated to the amount of past medical expenses, and the jury found *301 in a special verdict that the plaintiff "had incurred" expenses in that amount. See Mansfield, 620 So.2d at 988. Thus, the only issue in Mansfield was whether there should be a setoff for 80% of the incurred expenses for which there was PIP coverage. We do not find that our construction of the term "payable," which is the precise issue we are asked to resolve in this case, is contrary to previous cases interpreting this subsection.
In summary, by examining the dictionary and case law definitions of the term "payable," applying well-recognized principles of statutory construction and examining legislative history, we conclude that the proper interpretation of the term "payable" is that only PIP benefits "currently payable" or owed by the PIP carrier as a result of expenses incurred by the plaintiff should be set off from a verdict that includes an award of future medical expenses. Accordingly, we answer the certified question in the affirmative, approve the decision of the Fourth District, and disapprove Kokotis.
It is so ordered.
ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
HARDING, C.J., dissents with an opinion, in which WELLS, J., concurs.
WELLS, J., dissents with an opinion.
SHAW, J., dissents.
HARDING, C.J., dissenting.
I respectfully dissent. The issue presented in this case is whether an award of future medical damages should be set off by the amount of remaining personal injury protection (PIP) benefits, if such benefits remain at the time of judgment. The answer to this question depends on the definition of the term "payable" as found in section 627.736(3), Florida Statutes (Supp.1996). In the decision below, the Fourth District Court of Appeal concluded that future medical expenses that have not been incurred at the time of trial are not included within the meaning of "payable," and therefore a verdict should not be reduced by the amount of remaining PIP benefits. Pizzarelli v. Rollins, 704 So.2d 630, 632-33 (Fla. 4th DCA 1997). In contrast, the Fifth District Court of Appeal in Kokotis v. DeMarco held that "payable" includes "expenses which have not yet accrued but which will result from the covered injury." 679 So.2d 296, 297 (Fla. 5th DCA 1996). This Court originally issued an opinion approving the definition of "payable" announced by the Fifth District in Kokotis. See Rollins v. Pizzarelli, 24 Fla. L. Weekly S69 (Fla. Feb. 4, 1999). However, on rehearing, the majority now adopts the definition of "payable" articulated by the district court below. I disagree with this "judicial U-turn."
The purpose behind the Florida no-fault statutory scheme is to allow each driver to collect certain statutorily required medical, disability, or death benefits regardless of fault. See Mansfield v. Rivero, 620 So.2d 987, 988 (Fla.1993) (citing Lasky v. State Farm Ins. Co., 296 So.2d 9 (Fla.1974)). In essence, the no-fault scheme grants tort-feasors a limited exemption from liability to the extent of the PIP benefits. See Mansfield, 620 So.2d at 988-89. I believe that the definition of "payable" adopted by the Fifth District in Kokotis is more in keeping with the spirit of the no-fault statutory scheme. See also State Farm Mut. Auto. Ins. Co. v. Klinglesmith, 717 So.2d 569, 571-72 (Fla. 5th DCA 1998) (Harris, J., dissenting). If the no-fault scheme immunizes tortfeasors from liability for a victim's medical expenses to the extent of the victim's PIP benefits, then this immunity must extend to all of the victim's PIP benefits, even those that remain at the time of trial. The interpretation of "payable" articulated by the Fourth District and now adopted by the new majority will extinguish a portion of this immunity (the remaining PIP coverage) and potentially permit a victim to collect a double recovery for future medical expenses. This result is contrary to the no-fault statutory scheme. *302 See Purdy v. Gulf Breeze Enters., 403 So.2d 1325, 1329 (Fla.1981) ("To prevent the injured persons from receiving double recovery, the legislature has provided that any PIP benefits they have received from their insurers will be set off from the amount they are entitled to recover from the tortfeasors."). Therefore, I would deny the motion for rehearing and adhere to this Court's previous holding in this case.
WELLS, J., concurs.
WELLS, J., dissenting.
I dissent because I believe the prior majority decision and the Fifth District's decision in Kokotis v. DeMarco, 679 So.2d 296 (Fla. 5th DCA 1996), are correct and sound decisions.
I also dissent because I conclude that there is no proper basis upon which to grant a rehearing in this case.
NOTES
[1] This statute provides:

(3) Insured's rights to recovery of special damages in tort claims.No insurer shall have a lien on any recovery in tort by judgment, settlement, or otherwise for personal injury protection benefits, whether suit has been filed or settlement has been reached without suit. An injured party who is entitled to bring suit under the provisions of ss. 627.730-627.7405, or his legal representative, shall have no right to recover any damages for which personal injury protection benefits are paid or payable. The plaintiff may prove all of his special damages notwithstanding this limitation, but if special damages are introduced in evidence, the trier of facts, whether judge or jury, shall not award damages for personal injury protection benefits paid or payable. In all cases in which a jury is required to fix damages, the court shall instruct the jury that the plaintiff shall not recover such special damages for personal injury protection benefits paid or payable.
§ 627.736(3), Fla. Stat. (1991) (emphasis supplied).
[2] Specifically, section 627.7372(1), Florida Statutes (1991), provides:

(1) In any action for personal injury or wrongful death arising out of the ownership, operation, use, or maintenance of a motor vehicle, the court shall admit into evidence the total amount of all collateral sources paid to the claimant, and the court shall instruct the jury to deduct from its verdict the value of all benefits received by the claimant from any collateral source.
(Emphasis supplied.) This statute has since been repealed, see ch. 93-245, § 3 at 2439, Laws of Fla., and the general collateral source statute is now found in section 768.76, Florida Statutes (1999).
[3] Because the total verdict in the case was $25,048 ($5000 in future medical expenses, $20,000 in pain and suffering, and $48 in lost earnings), after the trial court set off the remaining $524.78 in available PIP benefits, the total judgment became $24,523.22. The Pizzarellis had made a demand for judgment in the case for $20,000. According to section 768.79, Florida Statutes (1991), if the plaintiff makes a demand which is not accepted by the defendant and the plaintiff recovers a judgment in an amount at least 25% greater than the demand, he or she shall be entitled to recover reasonable costs and attorney's fees incurred from the date of the filing of the demand. Thus, after setting off the available PIP benefits, the judgment was no longer 25% greater than the demand and the trial court found the Pizzarellis were no longer entitled to reasonable costs and attorney's fees under section 768.79.
[4] Section 627.736(4), Florida Statutes (1991), provides in relevant part:

(4) BENEFITS; WHEN DUE.Benefits due from an insurer under ss. 627.730-627.7405 shall be primary, except that benefits received under any workers' compensation law shall be credited against the benefits provided by subsection (1) and shall be due and payable as loss accrues, upon receipt of reasonable proof of such loss and the amount of expenses and loss incurred which are covered by the policy issued under ss. 627.730-627.7405.
(Emphasis supplied.)
[5] Although this argument is less compelling where, as here, the defendant is the uninsured motorist carrier rather than the tortfeasor, in this case there is no indication that Allstate has agreed to be bound to pay its PIP benefits in the future or that it has agreed to pay plaintiff the balance of the PIP benefits in exchange for receiving the setoff.
[6] In Haugen v. Town of Waltham, 292 N.W.2d 737, 739 (Minn.1980), the Minnesota Supreme Court examined Minnesota's no-fault statutes, which provided for a deduction from the plaintiff's recovery of "the value of ... economic loss benefits paid or payable or which will be payable in the future." (Emphasis supplied.) The court concluded that there were "numerous problems" with the statutory requirement that benefits "payable in the future" must be deducted from the plaintiff's recovery, including the problem that because the no-fault carrier is not a party to the plaintiff's suit, the plaintiff had no certain remedy completely allowing him or her to obtain justice. See id. at 740. Mirroring our concerns if "payable" were interpreted as "payable in the future," the Minnesota court observed that in such a case, "the plaintiff has no assurance that his insurance carrier will accept the amount of damages awarded, let alone that it will accept responsibility for such damages." Id.