LEWIS, J.
In these consolidated appeals, appellants, the Florida Department of Financial Services and Tom Gallagher, as Chief Financial Officer, seek review of the trial court’s two final judgments declaring that appellees, RISCORP Insurance Company, RISCORP Property & Casualty Insurance Company (collectively “RISCORP”), and Florida Hospitality Mutual Insurance Company (“FHM”) were entitled to refunds for their overpayment into Florida’s Special Disability Trust Fund (“SDTF”) and Workers’ Compensation Administration Trust Fund (“WCATF”).[1] Concluding that the term “net premiums collected,” as contained in section 440.51, Florida Statutes, and the term “net premiums written,” as contained in section 440.49, Florida Statutes, include ceded reinsurance premiums, we reverse the final judgments to the extent that appellees’ refunds are attributable to reinsurance premiums. We affirm the final judgments to the extent that appellees’ refunds are attributable to brokerage fees and commissions without further discussion. We also affirm the trial court’s denial of DLES’s Motion to Amend Answer and to Withdraw Certain Responses to Admissions Requests without further discussion.
The legislative intent behind the creation of the SDTF was to “encourage the employment, reemployment, and accommodation of the physically disabled by reducing an employer’s insurance premium for reemploying an injured worker, to decrease litigation between carriers on apportionment issues, and to protect employers from excess liability for compensation and medical expense ....”§ 440.49(1), Fla. Stat. (1999). The SDTF is maintained by annual assessments upon the insurance companies writing compensation insurance in Florida, commercial self-insurers, assessable mutuals, and self-insurers. § 440.49(9)(b)l., Fla. Stat. (1999). Pursuant to section 440.49(9)(b)3., Florida Statutes (1999), “The net premiums written by the companies for workers’ compensation in this state and the net premium written applicable to the self-insurers in this state *263 are the basis for computing the amount to be assessed as a percentage of net premiums.” (emphasis added). The annual amount necessary to fund the SDTF is to be “prorated among the insurance companies writing compensation insurance in the state and the self-insurers.” § 440.49(9)(b)2., Fla. Stat. (1999).
The legislative purpose behind the WCATF is to provide “for the payment of all expenses in respect to the administration of [chapter 440], including the vocational rehabilitation of injured employees ... and the payments due under s. 440.15(1)® and the funding of the Bureau of Workers’ Compensation Fraud within the Department of Insurance.” § 440.50(l)(a), Fla. Stat. (1999). The total expense of the administration of the WCATF is to be prorated among insurance carriers writing compensation insurance in Florida and self-insurers. § 440.51(l)(b), Fla. Stat. (1999). “The net premiums collected by the companies and the amount of premiums a self-insurer would have to pay if insured are the basis for computing the amount to be assessed.” Id. (emphasis added).
HISTORY OF THE STATUTES
In 1975, the Legislature amended sections 440.49 and 440.51, which had both used the term “gross premiums collected,” to prescribe that assessments would be based on “net premiums collected.” See Ch. 75-209, §§ 24-25, at 475-79, Laws of Fla. In 1993, the Legislature amended section 440.49, changing “net premiums collected” to “net premiums written.” See Ch. 93-415, § 43, at 177, Laws of Fla. Neither term has been statutorily defined. As a result of the 1993 amendment, DLES adopted the following rule:
Net premiums written are all premiums written less return premiums arising from policies issued by an insurer. For insurance companies, assessable mutuals and commercial self-insurance funds this is the same information you are required to report to the Department of Insurance on page 14 of the National Association of Insurance Commissioners Annual Statement.
Fla. Admin. Code R. 38F-4.001(2). This rule was repealed on December 18, 1995, as part of an effort by Governor Chiles to reduce the number of agency rules. See 21 Fla. Admin. W. 7395 (Oct. 27,1995). In 1997, the Legislature enacted a law authorizing the deduction of “any amount paid or credited as dividends or premium refunds ... by the insurer to its policyholders” from “net premiums written” and “net premiums collected,” as contained in sections 440.49 and 440.51. See § 624.5094, Fla. Stat. (1997). In 2000, in response to this .litigation, the Legislature attempted to clarify the terms at issue by setting forth:
Legislative intent. — It is the intent of the Legislature to clarify that the terms “net premiums written” and “net premiums collected” as used in chapter 440, Florida Statutes, have meant and continue to mean premiums arising from workers’ compensation policies issued by an insurer in this state as the primary insurance carrier without deduction for ceded reinsurance premiums transferred to an insurance company for reinsurance purchased or any premium expense attributable to purchasing reinsurance.
Ch. 00-150, § 1, at 564, Laws of Fla.
PROCEDURAL HISTORY
On September 10, 1999, RISCORP filed suit against DLES, alleging that, in calculating its net premiums written and its net premiums collected from 1995 to 1997, it overpaid its assessments by not deducting ceded reinsurance premiums. RISCORP sought a declaratory judgment that the *264 term “net premiums written,” as contained in section 440.49, and the term “net premiums collected,” as contained in section 440.51, do not include reinsurance premiums. RISCORP also requested that the trial court issue an order of mandamus to compel DLES “to cause a refund to be paid” to it. FHM subsequently filed suit against DLES, essentially seeking the same relief sought by RISCORP.
- DLES filed several affidavits with the trial court, establishing that between approximately 1975 and 1993, no controversy as to the two terms at issue had arisen. Several of DLES’s past and current employees explained in their affidavits that, during these years, they only had to bill a handful of approximately 400 carriers for deficiencies in their assessment reporting. DLES’s Assessment Coordinator, Evelyn Vlasak, also explained, via affidavit, that, in 1995, only 13.6% of the carriers reporting to DLES had an underreporting discrepancy in excess of $100 with respect to their liability under section 440.49 and the SDTF. In 1995, only 17.6% of the reporting carriers had an underreporting discrepancy in excess of $100 with respect to their liability under section 440.51 and the WCATF. In 1998, only 10.8% of reporting carriers had an underreporting discrepancy in excess of $100 as to the SDTF, and only 16.4% of reporting carriers had an underreporting discrepancy in excess of $100 as to the WCATF. Vlasak further explained that such discrepancies could be due to a variety of factors, factors other than the deduction of reinsurance premiums.
The record also contains a December 16, 1997, letter written by DLES’s former General Counsel to an insurance carrier not a party to this case, an internal memorandum dated September 29, 1998, written by a Senior Attorney for DLES, and four letters written in 1998 by a former Senior Management Analyst II for DLES addressed to insurance carriers other than appellees. In each of these documents, DLES’s employees informed their respective recipients that reinsurance premiums could be deducted from the carriers’ net premiums written and net premiums collected.
On September 22, 1999, DLES sent Bulletin # 209 to all carriers and self-insured funds in Florida, explaining that the Division would collect assessments for the SDTF based on “net written premium,” which the Division interpreted to mean “all premiums written less return premiums arising from policies issued by an insurer.” Bulletin #209 further explained that the Division would collect the WCATF assessments based on “net premium collected,” which the Division interpreted to mean “all premiums, including those ceded to rein-surers.”
In the trial court’s final judgment with respect to FHM, the court found that FHM was entitled to a refund or a credit against its respective assessment obligations in lieu of a refund in the amount of $576,697 for overpayments or payments made in error to the State Treasury on its WCATF assessments for the years 1996, 1997, and 1998 and $1,044,172 for overpay-ments or payments made in error to the State Treasury on its SDTF assessments for the years 1996, 1997, and 1998. In its final judgment with respect to RISCORP, the trial court similarly found that RIS-CORP was entitled to a refund in the amount of $14,274,239 for overpayments to the State Treasury on its SDTF assessments for the years 1995, 1996, and 1997 and to a refund in the amount of $8,201,647 for overpayments to the State Treasury on its WCATF assessments for the years 1995, 1996, and 1997. These appeals followed.
*265 ANALYSIS
In construing a statute, the plain meaning of the statute is our first consideration. See Fla. Dep’t of Educ. v. Cooper, 858 So.2d 394, 395 (Fla. 1st DCA 2003); Jackson County Hosp. Corp. v. Aldrich, 835 So.2d 318, 328-29 (Fla. 1st DCA 2002). It is well settled that legislative intent is the polestar that guides this Court’s statutory construction analysis. See State v. J.M., 824 So.2d 105, 110 (Fla.2002) (citation omitted). Legislative intent is determined primarily from the language of a statute. State v. Rife, 789 So.2d 288, 292 (Fla.2001) (citations omitted).
In looking at the plain language of sections 440.49(9)(b)3. and 440.51(l)(b) and the terms “net premiums written” and “net premiums collected,” it is clear that the Legislature intended that certain costs or expenses should be excluded from a carrier's assessment base. Such a conclusion is evident based upon the Legislature’s 1975 amendment of the statutes wherein it substituted the term “net” for the term “gross.” The term “gross” is defined as “[ejxclusive of deductions; total,” while the term “net” is defined as “[rjemaining after all deductions and adjustments have been made.” The American Heritage Dictionary 375, 570 (4th ed.2001); see also Rollins v. Pizzarelli, 761 So.2d 294, 298 (Fla.2000) (holding that, when necessary, the plain and ordinary meaning of a word can be ascertained by reference to a dictionary).
The annual amounts necessary to fund the SDTF and the WCATF are to be prorated among the insurance companies writing compensation insurance in Florida and the self-insurers. §§ 440.49(9)(b)2., 440.51(l)(b), Fla. Stat. (1999). As explained by appellants, an insurance company may choose to purchase reinsurance to protect it from a risk it has already assumed. Upholding appellees’ interpretation of the statutes at issue, i.e., that net premiums written and net premiums collected do not include reinsurance premiums, would unreasonably permit a carrier who chooses to purchase reinsurance to reduce its assessment base while a carrier who chooses not to purchase reinsurance would be unable to do so. Such an outcome would be contrary to the intent of sections 440.49 and 440.51.
Our conclusion that net premiums collected and net premiums written include reinsurance premiums is also supported by the record, which establishes that no “controversy” arose with respect to the terms at issue between 1975 and 1993. By rule, DLES defined the term “net premiums written” as including reinsurance premiums. This rule was not repealed until December 18, 1995. Thus, for twenty years, carriers had knowledge that net premiums collected and net premiums written included reinsurance premiums. Even after DLES repealed the rule, the vast majority of carriers still included their reinsurance premiums in their net premiums collected and net premiums written, including appellees. As DLES’s Assessment Coordinator explained, in 1998, only 10.8% of reporting carriers had an un-derreporting discrepancy as to the SDTF and only 16.4% of reporting carriers had an underreporting discrepancy as to the WCATF. These discrepancies may have been due to a variety of factors other than the deduction of reinsurance premiums. Moreover, in 1999, DLES issued Bulletin # 209, affirming the agency’s position that net premiums collected and net premiums written include reinsurance premiums.
Accordingly, we AFFIRM in part; REVERSE in part and REMAND for further proceedings.
HAWKES, J., concurs; WEBSTER, J., concurs in result with written opinion.

. All actions in these cases occurred when the Department of Labor and Employment Security ("DLES”) administered the workers’ compensation laws and when the Division of Workers’ Compensation ("Division”) was a division of DLES.