Dear Judge Simmons and Chairman Carey:
On behalf of your respective entities, you have asked the following questions:
1. May revenues generated by section 939.185, Florida Statutes, be used to fund an alternative sanctions coordinator position created pursuant to sections 984.09 and 985.037, Florida Statutes?
2. Is the county required to use revenues from section 939.185, Florida Statutes, to fund a "local requirement" designated by the chief judge?
Due to the interrelated nature of your questions, they will be answered together.
Section 939.185, Florida Statutes, provides:
"(1)(a) The board of county commissioners may adopt by ordinance an additional court cost, not to exceed $65, to be imposed by the court when a person pleads guilty or nolo contendere to, or is found guilty of, or adjudicated delinquent for, any felony, misdemeanor, delinquent act, or criminal traffic offense under the laws of this state. Such additional assessment shall be accounted for separately by the county in which the offense occurred and be used only in the county imposing this cost, to be allocated as follows:
1. Twenty-five percent of the amount collected shall be allocated tofund innovations to supplement state funding for the elements of thestate courts system identified in s. 29.004 and county funding for localrequirements under s. 29.008(2)(a)2.
2. Twenty-five percent of the amount collected shall be allocated to assist counties in providing legal aid programs required under s.29.008(3)(a).
3. Twenty-five percent of the amount collected shall be allocated to fund personnel and legal materials for the public part of a law library.
4. Twenty-five percent of the amount collected shall be used as determined by the board of county commissioners to support teen court programs, except as provided in s. 938.19(7), juvenile assessment centers, and other alternative programs.
Each county receiving funds under this section shall report the amount of funds collected pursuant to this section and an itemized list of expenditures for all authorized programs and activities. The report shall be submitted in a format developed by the Supreme Court to the Governor, the Chief Financial Officer, the President of the Senate, and the Speaker of the House of Representatives on a quarterly basis beginning with the quarter ending September 30, 2004. Quarterly reports shall be submitted no later than 30 days after the end of the quarter. Any unspent funds at the close of the county fiscal year allocated under subparagraphs 2., 3., and 4., shall be transferred for use pursuant to subparagraph 1." (e.s.)
The statute requires that twenty-five percent of the revenues collected pursuant to its terms be used to fund innovations to supplement state funding for elements of the state courts system identified in section 29.004, Florida Statutes, [1] and innovations to supplement county funding for local requirements under section 29.008(2)(a)2., Florida Statutes.
Section 939.185, Florida Statutes, does not define "innovations" for its purposes. Absent a statutory definition, the term must be given its plain and ordinary meaning.[2] "Innovation" is defined as "something that deviates from established doctrines or practice: something that differs from existing forms: change, novelty."[3] Thus, the Legislature has authorized counties to use the funds derived from section 939.185, Florida Statutes, in new and different ways to supplement the elements for the court system provided by the state. This creates a broad array of potential expenditures, seemingly restricted only by its "supplemental" relationship to the elements furnished by the state or the local requirements under section 29.008(2)(a)2, Florida Statutes.
Section 29.008(2)(a), Florida Statutes, characterizes "[l]ocal requirements" as "those specialized programs, nonjudicial staff, and other expenses associated with specialized court programs, specialized prosecution needs, specialized defense needs, or resources required of a local jurisdiction as a result of special factors or circumstances." Section 29.008(2)(a)2., Florida Statutes, states that "[l]ocal requirements" exist:
"2. When:
a. The county has enacted an ordinance, adopted a local program, orfunded activities with a financial or operational impact on the circuitor a county within the circuit; or
b. Circumstances in a given circuit or county result in or necessitate implementation of specialized programs, the provision of nonjudicial staff and expenses to specialized court programs, special prosecution needs, specialized defense needs, or the commitment of resources to the court's jurisdiction." (e.s.)
Thus, when the county has either enacted an ordinance, adopted a local program, or funded activities with a financial or operational impact on the circuit, or when circumstances within the circuit necessitate the expenditure of funds for specialized programs, special prosecution needs, special defense needs, or the commitment of resources to the court, the Legislature has determined that a "local requirement" exists which will justify the expenditure of funds generated by section 939.185, Florida Statutes.
In this instance, the chief judge of the circuit and the board of county commissioners do not agree on what may be an appropriate expenditure of these funds. Ultimately, however, the Legislature has vested the county with the authority to make such a determination and it is beyond the authority of this office to question the exercise of such discretion. While the chief judge of the judicial circuit, along with the state attorney, the public defender, and the criminal conflict and civil regional counsel on matters which impact their offices, are authorized to identify all local requirements and to submit a tentative budget request for local requirements for the fiscal year, it is the board of county commissioners which determines whether to provide funding.[4] Where the Legislature has prescribed the manner in which a thing is to be done, it acts as a prohibition against its being done in any other manner.[5]
Section 984.09(3), Florida Statutes, requires each judicial circuit to have an alternative sanctions coordinator who serves under the chief administrative judge of the juvenile division of the circuit court.
The primary purpose of such a coordinator is to recommend the most appropriate available alternative sanctions to be imposed against a child who has committed direct contempt of court or indirect contempt of a court order. Clearly, the alternative sanctions coordinator program could be considered an activity with a financial or operational impact on the circuit or a county within the circuit.
Accordingly, it is my opinion that revenues generated by section 939.185, Florida Statutes, may be used to fund an alternative sanctions coordinator position created pursuant to sections 984.09 and 985.037, Florida Statutes. Moreover, it is ultimately within the county's discretion whether to fund a "local requirement" designated by the chief judge of the circuit.
Sincerely,
Bill McCollum Attorney General
BM/tals
[1] Section 29.004, Florida Statutes, enumerates the elements of the state courts system to be provided from state revenues appropriated by general law as follows:
"(1) Judges appointed or elected pursuant to chapters 25, 26, 34, and 35.
(2) Juror compensation and expenses.
(3) Reasonable court reporting and transcription services necessary to meet constitutional requirements.
(4) Construction or lease of facilities, maintenance, utilities, and security for the district courts of appeal and the Supreme Court.
(5) Court foreign language and sign-language interpreters and translators essential to comply with constitutional requirements.
(6) Expert witnesses who are appointed by the court pursuant to an express grant of statutory authority.
(7) Judicial assistants, law clerks, and resource materials.
(8) General magistrates, special magistrates, and hearing officers.
(9) Court administration.
(10) Case management. Case management includes:
(a) Initial review and evaluation of cases, including assignment of cases to court divisions or dockets.
(b) Case monitoring, tracking, and coordination.
(c) Scheduling of judicial events.
(d) Service referral, coordination, monitoring, and tracking for treatment-based drug court programs under s. 397.334. Case management may not include costs associated with the application of therapeutic jurisprudence principles by the courts. Case management also may not include case intake and records management conducted by the clerk of court.
(11) Mediation and arbitration, limited to trial court referral of a pending judicial case to a mediator or a court-related mediation program, or to an arbitrator or a court-related arbitration program, for the limited purpose of encouraging and assisting the litigants in partially or completely settling the case prior to adjudication on the merits by the court. This does not include citizen dispute settlement centers under s. 44.201 and community arbitration programs under s.985.16.
(12) Basic legal materials reasonably accessible to the public other than a public law library. These materials may be provided in a courthouse facility or any library facility.
(13) The Judicial Qualifications Commission.
(14) Offices of the appellate clerks and marshals and appellate law libraries."
[2] See, e.g., Sieniarecki v. State, 756 So. 2d 68 (Fla. 2000) (in absence of a statutory definition, words of common usage are construed in their plain and ordinary sense and, if necessary, the plain and ordinary meaning of the word can be ascertained by reference to a dictionary); Rollins v. Pizzarelli, 761 So. 2d 294 (Fla. 2000); In reMcCollam, 612 So. 2d 572 (Fla. 1993) (when language of statute is clear and unambiguous and conveys a clear meaning, statute must be given its plain and ordinary meaning); Frankenmuth Mutual Insurance Company v.Magaha, 769 So. 2d 1012 (Fla. 2000) (in ascertaining the plain and ordinary meaning of a term, a court may refer to a dictionary); Ops. Att'y Gen. Fla. 93-47 (1993) (in construing statute which is clear and unambiguous, the plain meaning of statute must first be considered) and 93-02 (1993) (since it is presumed that the Legislature knows the meaning of the words it uses and to convey its intent by the use of specific terms, courts must apply the plain meaning of those words if they are unambiguous).
[3] Webster's Third New International Dictionary (Unabridged, 1981),Innovation, p. 1166.
[4] Sees. 29.008(2)(c), Fla. Stat.
[5] Alsop v. Pierce, 19 So. 2d 799, 805-806 (Fla.)