Dear Mr. Broome:
On behalf of the City Council of the City of Titusville, you have asked for my opinion on substantially the following questions:
1. May the City Council institute a moratorium on the collection of business tax receipts and, if so, may a moratorium be implemented prior to the biannual review of its business tax?
2. May the City Council decrease the amount of the business tax receipt in an amount exceeding 5 percent, and may a decrease be implemented at any time other than the biannual review?
3. May the City Council initiate a moratorium on the collection of business tax receipts for new business and not existing businesses?
In sum:
1 and 2. The City of Titusville has no authority to revisit a validly enacted reclassification and revision ordinance prior to its scheduled biennial review or to make downward adjustments to individual classifications in excess of five percent.
3. The City Council of the City of Titusville has no authority to adopt a moratorium on the collection of business tax receipts for businesses within the city.
Questions One and Two
Your first and second questions are interrelated and will be answered together. The authority of a municipality to impose a tax is derived from Article VII, section 9, Florida Constitution.[1]
While section 166.021, Florida Statutes, secures the broad exercise of home rule powers for municipalities granted by Article VIII, section 2(b), Florida Constitution, municipalities possess no home rule powers to levy taxes.[2] Thus, a municipality must be able to point to constitutional or statutory authority to exercise the taxing power. In exercising its taxing power, a municipality is limited to that authority expressly, or by necessary implication, conferred.[3] Thus, as a general rule, "a municipality . . . has no inherent power to exempt from taxation property which it is authorized by statute or charter to tax, since, with some exceptions, delegation of power to tax does not include power to exempt from taxation or power to remit or compromise taxes. . . ."[4]
Section 205.0535(1), Florida Statutes, states that "[b]y October 1, 2008, any municipality that has adopted by ordinance a local business tax after October 1, 1995, may by ordinance reclassify businesses, professions, and occupations and may establish new rate structures, if the conditions specified in subsections (2) and (3) are met." Subsection (2) requires the establishment of an equity study commission to recommend a classification system and rate structure for local occupational license taxes prior to adoption of the ordinance. Subsection (3) sets parameters for the new license tax in terms of the amount that may be imposed and the maximum amount of revenue that may be generated. The intention of the Legislature in adopting section 205.0535, Florida Statutes, was to provide local governments with an opportunity to revise their occupational license tax ordinances and the continued opportunity to undertake a limited revision every other year thereafter.[5] While you have not advised this office that this is the case, I will assume that the City of Titusville has complied with the provisions of section 205.0535(1) — (3), Florida Statutes, in adopting its business tax ordinance.
Section 205.0535(4), Florida Statutes, recognizes that changes may occur and necessitate the reconsideration of such ordinances:
"After the conditions specified in subsections (2) and (3) are met, municipalities and counties may, every other year thereafter, increase or decrease by ordinance the rates of business taxes by up to 5 percent. An increase, however, may not be enacted by less than a majority plus one vote of the governing body. Nothing in this chapter shall be construed to prohibit a municipality or county from decreasing or repealing any business tax authorized under this chapter."
Thus, the statutory scheme authorizes the decrease of rates of business taxes by a maximum of five percent and a complete repeal of any business tax imposed pursuant to Chapter 205, Florida Statutes. However, the statute limits any such consideration to "every other year thereafter."
Where the Legislature has directed how a thing shall be done, it effectively operates as a prohibition against its being done in any other manner.[6] The Legislature has provided specific directions to local governments regarding occupational license tax rate revisions in section 205.0535(4), Florida Statutes. Nothing in that section authorizes a municipality to revisit a validly enacted reclassification and rate structure ordinance prior to its scheduled biennial review or to make downward adjustments to individual classifications in excess of five percent.
Therefore, it is my opinion that the City of Titusville has no authority to revisit a validly enacted reclassification and revision ordinance prior to its scheduled biennial review or to make downward adjustments to individual classifications in excess of five percent.
Question Three
You have asked whether the city is authorized to adopt a moratorium on the collection of business tax receipts for new businesses and not existing businesses. In the discussion above, I expressed my opinion that any reclassification and rate structure revisions may only be accomplished during the statutorily prescribed biennial review.
As discussed herein, it is the rule that in exercising its taxing power, a municipality is limited to that authority expressly, or by necessary implication, conferred.[7] Thus, as a general rule, "a municipality . . . has no inherent power to exempt from taxation property which it is authorized by statute or charter to tax, since, with some exceptions, delegation of power to tax does not include power to exempt from taxation or power to remit or compromise taxes. . . ."[8]
You have not provided any specifics of what the city may consider a "moratorium" and the only statutory definition available refers to a "[m]oratorium" as a "mandated temporary cessation or suspension" of the activity.[9] A common dictionary definition is "a suspension of activity" or "a legally authorized period to delay payment of money due or the performance of some other legal obligation, as in an emergency."[10] Black's Law Dictionary includes the following definition for "moratorium:"
"1. An authorized postponement, usu. a lengthy one, in the deadline for paying a debt or performing an obligation. 2. The period of this delay. 3. The suspension of a specific activity."[11]
In the absence of a direct statutory definition, words of common usage are construed in their plain and ordinary sense and if necessary, the plain and ordinary meaning of the word can be ascertained by reference to a dictionary.[12] Thus, a "moratorium" on the collection of business tax receipts may be seen to be a temporary suspension of the city's collection of these taxes.
As discussed herein, when exercising its taxing power, a municipality is limited to that authority expressly, or by necessary implication, conferred. The express authority to increase, decrease or repeal local business taxes on a biennial schedule does not authorize a municipality to temporarily suspend the payment of local business taxes.
Therefore, it is my opinion that the City Council of the City of Titusville has no authority to initiate a moratorium on the collection of business tax receipts for businesses within the city.
Sincerely,
 Bill McCollum Attorney General
BM/tgh
[1] Article VII, s. 9(a), Fla. Const, provides:
"Counties, school districts, and municipalities shall, and special districts may, be authorized by law to levy ad valorem taxes and may be authorized by general law to levy other taxes, for their respective purposes, except ad valorem taxes on intangible personal property and taxes prohibited by this constitution."
[2] See, e.g., Ops. Att'y Gen. Fla. 00-01 (2000) (city may not exempt business from occupational license requirement except as provided in Ch. 205, Fla. Stat.); 90-23 (1990) (city may not provide for rebate of ad valorem taxes collected on newly annexed property, in absence of constitutional or statutory authority allowing such action); 80-87 (1980); and 79-26 (1979) (municipality has no home rule powers with respect to levy of excise or non-ad valorem taxes and exemptions therefrom, as all such taxing power must be authorized by general law).
[3] See Op. Att'y Gen. Fla. 79-26 (1979).
[4] 16 McQuillin Municipal Corporations
(3rd rev. ed. 1994) s. 44.65, p. 243. See also Op. Att'y Gen Fla. 99-72 (1999) (city or county has no home rule power to levy taxes or provide exemptions therefrom).
[5] See Senate Staff Analysis and Economic Impact Statement on SB 364, dated March 4, 1993, Florida Senate. Cf. Op. Att'y Gen Fla. 95-46 (1995) discussing the amendment of municipal occupational license tax ordinances; Op. Att'y Gen. Fla. 96-83 (1996).
[6] See, e.g., Alsop v. Pierce,19 So. 2d 799, 805-806 (Fla. 1944); Dobbs v. Sea Isle Hotel,56 So. 2d 341, 342 (Fla. 1952); Thayer v. State,335 So. 2d 815, 817 (Fla. 1976).
[7] See Op. Att'y Gen. Fla. 79-26 (1979).
[8] See n. 4, supra.
[9] See s. 400.925(11), Fla. Stat., defining the term for purposes of Part VII, Ch. 400, Fla. Stat., relating to home medical equipment providers.
[10] Webster's New Universal Unabridged Dictionary p. 1249 (2003).
[11] Black's Law Dictionary p. 1031 (8th ed. 2004).
[12] See Sieniarecki v. State, 756 So. 2d 68 (Fla. 2000) andRollins v. Pizzarelli, 761 So. 2d 294 (Fla. 2000).