573 So.2d 909 (1990)
PASCO COUNTY, a Political Subdivision of the State of Florida, Appellant,
v.
TAMPA FARM SERVICE, INC., a Florida Corporation, Appellee.
No. 90-00624.
District Court of Appeal of Florida, Second District.
December 14, 1990.
Rehearing Denied February 6, 1991.
*910 Karla A. Stetter, Chief Asst. County Atty., New Port Richey, for appellant.
Wallace B. Anderson, Jr. of Allen, Dell, Frank & Trinkle, Tampa, for appellee.
ALTENBERND, Judge.
Pasco County appeals a final judgment which enjoins its enforcement of waste disposal ordinances against Tampa Farm Service, Inc. The trial court determined that the activities of Tampa Farm were protected under the Florida Right to Farm Act, section 823.14, Florida Statutes (1987). From a review of the record, we believe that the trial court misinterpreted this statutory right to farm and applied an incorrect standard in determining that Tampa Farm's activities did not constitute a "more excessive farm operation with regard to ... odor." Accordingly, we reverse the judgment and remand for a new trial.
Tampa Farm is primarily involved in commercial egg and poultry production in Hillsborough County. Since November 1977, the Tampa Farm facilities in Hillsborough County have maintained a population of 1.5 to 2 million chickens. In addition to eggs and meat, the Tampa Farm operation produces a great quantity of poultry manure, a by-product with less desirable and less marketable characteristics.
Tampa Farm also owns approximately 849 acres of agricultural property located at three different locations in unincorporated Pasco County. Since 1977, Tampa Farm has used this property for hay production. Tampa Farm has been able to dispose of its poultry manure as soil enrichment in these hayfields. From 1977 to 1983, Tampa Farms used an agricultural method which allowed the manure to be spread in a dry and relatively odor-free state.
In 1983, Tampa Farm began using a different type of chicken housing which led to more frequent collection of manure. Consequently, Tampa Farm changed from a dry to wet manure distribution process. Tampa Farm began spraying the hayfields with many truckloads of liquid manure on a weekly, if not daily, basis. It is undisputed that the change from dry manure to wet manure resulted in a substantial increase in the locale's odor. Indeed, to avoid extensive testimony, the parties stipulated that:
Wet chicken manure, used as fertilizer, is more odious than dry chicken manure, and the odor from the chicken manure, used as fertilizer, has increased since March of 1982.
Although the trial judge did not personally experience this problem, he did receive testimony from people who lived in the area for many years. They all testified that the problem with odor and flies greatly increased upon the change in fertilizer.
In August and September of 1987, prompted by the increase in odor emanating from the Pasco property, Pasco County cited Tampa Farm for violations of the County's waste and garbage disposal ordinances. Tampa Farm filed the action below *911 requesting a declaratory judgment and an injunction against the enforcement of the ordinances in Pasco County. Tampa Farm maintained that its operations in both Hillsborough and Pasco Counties were protected by the Florida Right to Farm Act. The trial court agreed and entered a final judgment restraining Pasco County from enforcing its environmental regulations.
In order to understand the error which occurred in the trial court, it is important to analyze three subsections of the Florida Right to Farm Act separately. Section 823.14(4)(a) protects a farm which has been established for at least one year from being declared a public or private nuisance "if the farm operation conforms to generally accepted agricultural and management practices."[1] Subsection (4)(a) contains four exceptions which are not material to this case; however, it is noteworthy that the four exceptions involve activities which would rarely, if ever, be regarded as acceptable agricultural practices.
Section 823.14(4)(b) protects an established farm from being declared a nuisance merely because of: 1) a change in ownership, 2) a change in the type of farm product being produced, or 3) a change in the conditions in or around the locality of the established farm. Thus, Tampa Farms is free to sell the farm, grow strawberries, or allow urban development in the neighborhood without fear of a lawsuit to abate its activities.
Subsection (5) of section 823.14 is the critical subsection in this case.[2] Neither the parties, the trial court, nor this court are aided by any precedent interpreting the statutory language. Under this subsection, any "change to a more excessive farm operation with regard to noise, odor, dust, or fumes," is not afforded the statutory protection if the farm was adjacent to an established homestead or business on March 15, 1982. It is undisputed that the hayfields in Pasco County were adjacent to homesteads and businesses in 1982. The Act broadly defines "farm operation."[3] Because the generation of odors falls within that definition, it is clear that the change from dry fertilizer to more odiferous wet fertilizer is a change in farm operation. Hence, the critical question is whether it is a "more excessive" operation.
Tampa Farms argued in the trial court and in this court that so long as it continues to raise chickens and hay, and does not increase the size of the operation, it can make virtually any change in specific farm practices with impunity, if the new practice is a generally accepted agricultural practice. *912 Thus, Tampa Farms maintains that it may use any agriculturally acceptable fertilizer, herbicide, or other procedure which is developed in the future to produce hay and chickens  no matter how disruptive to its neighbors  because the methods it used in 1982 were legal. Tampa Farms essentially convinced the trial court that a change was not excessive under section 823.14(5) if it was a generally accepted agricultural practice under section 823.14(4)(a). The statutory language and the goals of the Act do not support this interpretation. Even if a practice is agriculturally acceptable, it may cause unreasonable degradation for the established neighborhood. This seems to be the very problem which the exception in section 823.14(5) was designed to solve.
Statutes creating a "right to farm" are of recent origin. Generally, these statutes are intended to preserve productive land for agricultural purposes and to protect the established farmer from the demands of "sprawling urban development." Hanna, "Right to Farm" Statutes  The Newest Tool in Agricultural Land Preservation, 10 Fla.St.U.L.Rev. 415 (1982). The goals and purposes of such statutes are meritorious. The legislature certainly has valid reasons to protect established farmers from the expense and harassment of lawsuits aimed at declaring this vital industry to be a nuisance.
On the other hand, the scientific technology of any industry, including agriculture, may undergo changes which are acceptable within the industry and yet very detrimental to the industry's neighbors. We do not interpret the Florida Right to Farm Act as an unfettered license for farmers to alter the environment of their locale merely because the practices which they used in 1982 were acceptable at that time. Technologies which are implemented by farmers after 1982 are subject to litigation raising claims in nuisance and to reasonable governmental regulations.[4] It may be that neither the court nor the local government can require the farm owner, under a nuisance theory, to comply with requirements more stringent than those existing in 1982, but the government has the power to enforce those historic levels.
In light of the purposes of the Act, we do not interpret a "more excessive farm operation" to include minor odor changes or minimal degradation of the local environment. The Act seems to afford farmers protection for these minor changes but does not afford protection for more "excessive" changes. Thus, a court or a local government is free to regulate changes in agricultural practices only if those changes involve significant or substantial degradation in the locale. We admit this line is difficult to define and would observe that the legislature has given the courts little assistance in this process. In this case, however, the evidence strongly supports a finding of a substantial change in the odor of the locale.
Thus, we remand this case to the trial court for a new trial to determine whether the change in fertilizer has resulted in a substantial degradation of the locale that falls within section 823.14(5) and, if so, to determine whether the county's regulations are valid under traditional nuisance rules to the extent that they regulate degradation from the 1982 threshold.
Reversed and remanded.
RYDER, A.C.J., and THREADGILL, J., concur.
NOTES
[1] Section 823.14(4)(a), Florida Statutes (1987), states:

No farm operation which has been in operation for 1 year or more since its established date of operation and which was not a nuisance at the time of its established date of operation shall be a public or private nuisance if the farm operation conforms to generally accepted agricultural and management practices, except that the following conditions shall constitute evidence of a nuisance:
1. The presence of untreated or improperly treated human waste, garbage, offal, dead animals, dangerous waste materials, or gases which are harmful to human or animal life.
2. The presence of improperly built or improperly maintained septic tanks, water closets, or privies.
3. The keeping of diseased animals which are dangerous to human health, unless such animals are kept in accordance with a current state or federal disease control program.
4. The presence of unsanitary places where animals are slaughtered, which may give rise to diseases which are harmful to human or animal life.
[2] Section 823.14(5), Florida Statutes (1987), states:

WHEN EXPANSION OF OPERATION NOT PERMITTED
This act shall not be construed to permit an existing farm operation to change to a more excessive farm operation with regard to noise, odor, dust, or fumes where the existing farm operation is adjacent to an established homestead or business on March 15, 1982.
[3] Section 823.14(3)(b), Florida Statutes (1987), defines "farm operation" as:

[A]ll conditions or activities by the owner, lessee, agent, independent contractor, and supplier which occur on a farm in connection with the production of farm products and includes, but is not limited to, the marketing of produce at roadside stands or farm markets; the operation of machinery and irrigation pumps; the generation of noise, odors, dust, and fumes; ground or aerial seeding and spraying; the application of chemical fertilizers, conditioners, insecticides, pesticides, and herbicides; and the employment and use of labor.
[4] It should be noted that Pasco County concedes that its regulations are based upon a nuisance theory. Counties frequently have the power to abate or prohibit activities which are nuisances per se or nuisances in fact. Carter v. Town of Palm Beach, 237 So.2d 130 (Fla. 1970); City of Miami Beach v. Texas Co., 141 Fla. 616, 194 So. 368 (1940); see generally 12 Fla.Jur.2d Counties and Municipal Corporations §§ 207-08 (1979). It is possible, however, that a county may also have the authority to regulate an activity to promote the public health, safety, and welfare, even if the activity is not so obnoxious as to constitute a nuisance. The power given to legislative and executive bodies to regulate environmental problems may be greater than the power given to the judicial branch to abate public and private nuisances. Since the County has not presented this issue in this appeal, it is a question which can await resolution.