Dear Mr. Battista:
On behalf of the Citrus County Board of County Commissioners, your office has asked the following questions:
1. Does the term "residential" in section 604.50, Florida Statutes, require that persons reside in the dwelling on a full-time basis in order to remove the building from the exemption for nonresidential farm building under this section?
2. Regardless of whether a building is determined to be "residential," does the county have the authority to enforce its zoning regulations regarding the construction of the building on land classified as agriculture under section 193.461, Florida Statutes, if those regulations do not limit the operational activity of the bona fide farm operation?
In sum:
1. The term "residential" in section 604.50, Florida Statutes, does not require that persons reside in the dwelling on a full-time basis in order to remove the building from the exemption for nonresidential farm building under this section.
2. The county has the authority to enforce its zoning regulations regarding the construction of a building on land classified as agriculture under section 193.461, Florida Statutes, if those regulations do not limit the operational activity of the bona fide farm operation.
You state that a resident of Citrus County has constructed a structure on his land for which he currently has an agricultural exemption from the property appraiser's office pursuant to section 193.461, Florida Statutes. According to your letter, the structure although superficially looking like a barn and having a large storage area with two large garage-type doors on it, contains two bedrooms, a bathroom and a kitchen which are offered as accommodations for the resident's children and for business associates when they visit. A question has been raised as to whether the structure is exempt from the permitting process pursuant to sections 604.50 and section 823.14, Florida Statutes.
Question One
Section 553.73(9), Florida Statutes, providing for the Florida Building Code, states in pertinent part:
"The following buildings, structures, and facilities are exempt from the Florida Building Code as provided by law, and any further exemptions shall be as determined by the Legislature and provided by law:
* * *
(c) Nonresidential farm buildings on farms."
In addition, section 604.50, Florida Statutes, provides:
"Notwithstanding any other law to the contrary, any nonresidential farm building is exempt from the Florida Building Code and any county or municipal building code. For purposes of this section, the term `nonresidential farm building' means any building or support structure that is used for agricultural purposes, is located on a farm that is notused as a residential dwelling, and is located on land that is an integral part of a farm operation or is classified as agricultural land under s. 193.461. The term `farm' is as defined in s. 823.14."[1]
(e.s.)
In light of the language used in section 604.50, Florida Statutes, you ask what is meant by a "residential dwelling." The term is not defined in the statute or in Chapter 604, Florida Statutes. In the absence of a statutory definition, words of common usage are construed in their plain and ordinary sense and, if necessary, the plain and ordinary meaning of the word can be ascertained by reference to a dictionary.[2] The term "dwelling" is generally defined as "a building or construction used for residence: abode, habitation."[3] As you note, the 2007 Florida Building Code respectively defines "dwelling" and "dwelling unit" as:
"DWELLING. Any building that contains one or two dwelling units used, intended, or designed to be built, used, rented, leased, let or hired out to be occupied, or that are occupied for living purposes.
DWELLING UNIT. A single unit providing complete independent living facilities for one or more persons, including permanent provisions for living, sleeping, eating, cooking and sanitation."[4]
A facility with two bedrooms, a bathroom, and a kitchen would appear to fall within the definitions of a dwelling. While the term "residential" does not appear to be defined by the Florida Building Code, the term has been defined generally to mean "used, serving, or designed as a residence or for occupation by residents (a residential hotel)."[5] Black's Law Dictionary defines "Residence" to mean:
"The act or fact of living in a given place for some time . . . The place where one actually lives, as distinguished from a domicile . . .Residence usu. just means bodily presence as an inhabitant in a given place; domicile usu. requires bodily presence plus an intention to make the place one's home. . . . A house or other fixed abode; a dwelling. . . ."[6]
In addition, I note that section 776.013(5)(b), Florida Statutes, defines "Residence" for purposes of the use of justifiable force for protection of the home to mean a dwelling in which a person resides either temporarily or permanently or is visiting as an invited guest. Section 856.015(1)(g), Florida Statutes, relating to open house parties defines "Residence" to mean a home, apartment, condominium, or other dwelling unit.
In light of the above, it appears that the term "residential dwelling" may include facilities that are occupied for living purposes, even though such occupancy is on a temporary basis. To conclude otherwise would mean that a structure, or part thereof, clearly designed for residential use could avoid compliance with the state's building codes simply by claiming that the structure would not be used full-time. Such a conclusion would appear to be inconsistent with the underlying polices for adoption of a uniform building code to protect public health, safety, and welfare.
Thus, I am of the opinion that the term "residential" in section 604.50, Florida Statutes, does not require that persons reside in the dwelling on a full-time basis in order to remove the building from the exemption for nonresidential farm building under this section when the structure is clearly designed for residential use. The application of the Florida Building Code to a structure in any given instance, however, is one that the county must make.
Question Two
Section 823.14, Florida Statutes, the "Florida Right to Farm Act,"[7]
recognizes the importance of agricultural production to this state's economy, stating that the "encouragement, development, improvement, and preservation of agriculture will result in a general benefit to the health and welfare of the people of the state."[8] The purpose of the act is to protect reasonable agricultural activities conducted on farm land from nuisance suits.[9]
Section 823.14(6), Florida Statutes, provides in part that:
"It is the intent of the Legislature to eliminate duplication of regulatory authority over farm operations as expressed in this subsection. Except as otherwise provided for in this section and s.487.051(2), and notwithstanding any other provision of law, a local government may not adopt any ordinance, regulation, rule, or policy to prohibit, restrict, regulate, or otherwise limit an activity of a bona fide farm operation on land classified as agricultural land pursuant to s. 193.461, where such activity is regulated through implemented best-management practices or interim measures developed by the Department of Environmental Protection, the Department of Agriculture and Consumer Services, or water management districts and adopted under chapter 120 as part of a statewide or regional program. . . ."[10]
In Attorney General Opinion 2001-71, this office was asked whether a zoning compliance permit was required for nonresidential farm buildings in order to assure that such construction complied with setback lines under the county's zoning plan. As the opinion points out, the legislative history of subsection (6) quoted above states that the amendment was to preclude a local government from adopting laws, ordinances, regulations, rules or policies to prohibit, restrict, regulate, or otherwise limit any continuing farm operation on any land currently engaged in bona fide production of a farm product.[11] Thus, a farming operation that falls within the coverage of section 823.14, Florida Statutes, would by definition, comply with the agricultural zoning classification of the land and would not be subject to county regulations or restrictions that attempt to limit such an operation.
As this office stated in Attorney General Opinion 2001-71, the prohibition against local ordinances that limit or restrict an activity of a bona fide farm operation on land that is classified as agricultural would not preclude application of zoning regulations that do not have such an intent or effect. Thus, this office concluded that a nonresidential farm building would be subject to a zoning compliance permit to the extent such a permitting requirement does not prohibit, restrict, regulate, or otherwise limit an activity of the farm. Since a setback requirement for building construction would not necessarily limit a farm's operation, this office stated that such a restriction would apply to such construction.
Section 823.14, Florida Statutes, has not been amended since Attorney General Opinion 2001-71 was issued. I am not aware of, nor have you brought to the attention of this office, any appellate court decision which would alter the conclusions reached in that opinion. Accordingly, this office continues to be of the opinion that a nonresidential farm building would be subject to a zoning compliance permit to the extent such a permitting requirement does not prohibit, restrict, regulate, or otherwise limit an activity of the farm.
I am therefore of the opinion that the county has the authority to enforce its zoning regulations regarding the construction of a building on land classified as agriculture under section 193.461, Florida Statutes, if those regulations do not limit the operational activity of the bona fide farm operation.
Sincerely,
 Bill McCollum Attorney General
BM/tjw
[1] See Op. Att'y Gen. Fla. 01-71 (2001), stating that building permits are not required for nonresidential farm buildings since such buildings are exempt from county and municipal building codes.
[2] See Sieniarecki v. State, 756 So. 2d 68 (Fla. 2000); Rollins v.Pizzarelli, 761 So. 2d 294 (Fla. 2000); In re McCollam, 612 So. 2d 572
(Fla. 1993) (when language of statute is clear and unambiguous and conveys a clear meaning, statute must be given its plain and ordinary meaning); Frankenmuth Mutual Insurance Company v. Magaha, 769 So. 2d 1012
(Fla. 2000) (in ascertaining the plain and ordinary meaning of a term, a court may refer to a dictionary).
[3] Webster's Third New International Dictionary p. 706 (unabridged ed. 1981). And see Black's Law Dictionary p. 546 (8th ed. 2004), defining "dwelling house" as
"1. The house or other structure in which a person lives; a residence or abode. 2. Real estate. The house and all buildings attached to or connected with the house. 3. Criminal law. A building, a part of a building, a tent, a mobile home, or another enclosed space that is used or intended for use as a human habitation. The term has referred to connected buildings in the same curtilage but now typically includes only the structures connected either directly with the house or by an enclosed passageway. — Often shortened to dwelling. —. . . ."
[4] Florida Building Code 2007, s. 202 Definitions, available online at:http://www2.iccsafe.org/states/florida_codes/.
[5] Webster's Third New International Dictionary p. 1931 (unabridged ed. 1981). And see Webster's Third New International Dictionary Resident
p. 1931 (unabridged ed. 1981) (one who resides in a place); Webster's Third New International Dictionary Residence p. 1931 (unabridged ed. 1981) (the act or fact of abiding or dwelling in a place for some time).
[6] Black's Law Dictionary p. 1335 (8th ed. 2004).
[7] See s. 823.14(1), Fla. Stat., providing the title to the act.
[8] Section 823.14(2), Fla. Stat.
[9] Id. See Pasco County v. Tampa Farm Service, Inc., 573 So. 2d 909
(Fla. 2d DCA 1990) ("legislature certainly has valid reasons to protect established farmers from the expense and harassment of lawsuits aimed at declaring this vital industry to be a nuisance"). Section 823.14(4)(a), Fla. Stat., generally provides that a farming operation which has been in existence for at least one year and which was not a nuisance at the time of its established date of operation shall not be a public or private nuisance if the farm operation conforms to generally accepted agricultural and management practices.
[10] Cf. s. 163.3162(4), Fla. Stat., stating:
"Except as otherwise provided in this section and s. 487.051(2), and notwithstanding any other law, including any provision of chapter 125 or this chapter, a county may not exercise any of its powers to adopt any ordinance, resolution, regulation, rule, or policy to prohibit, restrict, regulate, or otherwise limit an activity of a bona fide farm operation on land classified as agricultural land pursuant to s. 193.461, if such activity is regulated through implemented best management practices, interim measures, or regulations developed by the Department of Environmental Protection, the Department of Agriculture and Consumer Services, or a water management district and adopted under chapter 120 as part of a statewide or regional program; or if such activity is expressly regulated by the United States Department of Agriculture, the United States Army Corps of Engineers, or the United States Environmental Protection Agency."
And see J-II Investments, Inc. v. Leon County, 908 So. 2d 1140 (Fla. 1st DCA 2005) (plain, unambiguous terms of s. 163.3162(4), Fla. Stat., prevent counties from adopting ordinances relating to agriculture, but does not address enforcement of provisions already in place; if the Legislature intended to include the term "enforce" in the statute, it clearly could have done so).
[11] Florida Senate Staff Analysis and Economic Impact Statement, CS/CS/SB 1904, April 11, 2000.